**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Patrick Arthur CASTRO, Defendant–Appellant.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Herbert Thomas COTTER, Defendant–Appellant.**

**Nos. 87–5227, 87–5240.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 6, 1988.

Decided Oct. 23, 1989.

Bernard G. Skomal, San Diego, Cal., for defendant-appellant Castro.

Frank T. Morell, Moreno & Morell, Chula Vista, Cal., for defendant-appellant Cotter.

William Braniff, U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Before HALL, WIGGINS and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

After a ten-week jury trial, Patrick Arthur Castro and Herbert Thomas Cotter were each convicted of one count of conspiracy in violation of 18 U.S.C. § 371; seventeen counts of misapplication of bank funds in violation of 18 U.S.C. § 656; and five counts of causing false entries to be made in bank records in violation of 18 U.S.C. § 1005. Cotter also was convicted of three counts of submitting false loan applications in violation of 18 U.S.C. § 1014. Both Castro and Cotter appeal. We affirm.

## FACTS

Castro was a vice president and commercial loan officer at Mitsui Manufacturers Bank (the "Bank") in San Diego, California, during the time of the alleged conspiracy from June 1981 through July 1982. Cotter was a self-employed consultant who located loan customers and brought them to Castro to obtain loans from the Bank. The prosecution alleged approximately twenty-one loans were made by Castro, through Cotter, in a manner which defrauded the Bank.

Numerous loan applicants, many of whom lived outside the Bank's San Diego

lending area, described the same set of procedures for obtaining their loans. Many had financial problems and were referred to Cotter by mutual acquaintances or business associates. After meeting with Cotter, usually at his La Jolla offices, the borrowers were taken to the Bank to meet Castro. Loans ranging from $50,000 to $100,000 were approved by Castro after short meetings, some lasting only thirty minutes. A percentage of the loan amount was issued in the form of a cashier's check which the applicant was then instructed to cash at another bank. The cash then was given to either Castro or Cotter.

Several borrowers testified they belonged to a company called Consolidated Pacific Holding Corporation, of which Cotter was president. Members of the company obtained loans through Castro and the loans were then pooled within the company. Loan proceeds obtained by new members were used to pay off the loans of existing members. Castro and Cotter received commissions on each loan.

Borrowers also testified that Cotter provided local San Diego addresses for them to use on their loan applications to comply with the Bank's lending area policy. Evidence was presented that both Cotter and Castro knew prior to the approval of the loans that information contained in the loan applications was false. There was also testimony that Cotter created false information to conceal the poor financial condition of some applicants. One witness, Preetpal Singh, an Indian citizen visiting the United States with no residency status or credit in this country, nevertheless received a $100,-000 loan after meeting with Castro and describing his background. He testified Castro told him:

> You take this loan, and you pay us our commission which has been told to you, and you go out of the country, and no money is going to come out of you at all. No one is going to come after you to pay this loan or pay this money back.

Trial Transcript at 108.

## ANALYSIS

Castro and Cotter contend the district court erred in failing to give the jury a unanimous verdict instruction on the objects of the conspiracy; in denying their motions for severance; and in admitting evidence which they argue had the cumulative effect of denying them a fair trial. Cotter challenges the sufficiency of the evidence to convict him of conspiracy and of aiding and abetting Castro in the substantive crimes of which Cotter was convicted. Castro contends that he was improperly convicted of the conspiracy charge as well as the substantive crimes because the substantive crimes necessarily required the participation of two persons as did the conspiracy count. Finally, as to the sentences Castro and Cotter received, Cotter argues that the court improperly imposed a disparate sentence on him in relation to the sentence it imposed on Castro.

### A. Unanimous Verdict Instruction

Castro and Cotter contend their conspiracy convictions must be reversed because the trial judge failed to give the jury a specific unanimity instruction as to the objects of the conspiracy. They contend this omission violated their rights to a unanimous jury verdict under Article III, section two, and the sixth amendment of the Constitution.

### 1. Standard of Review

Neither of the appellants' counsel objected to the trial judge's proposed jury instruction on the conspiracy count. Castro's counsel admits he failed to catch the judge's substitution of a disjunctive instruction for the conjunctive wording proposed by appellants, and consequently did not request a specific unanimity instruction.

Because counsel failed to request the specific unanimity instruction or object to the court's instruction, reversal is required only if the trial court committed plain error in instructing the jury. *United States v. Bryan*, 868 F.2d 1032, 1038 (9th Cir.1989) (citing *United States v. Payseno*, 782 F.2d 832, 834 (9th Cir.1986). Plain error is high-

ly prejudicial error affecting substantial rights. *Bryan,* 868 F.2d at 1038. We will reverse a criminal conviction for plain error only "to prevent a miscarriage of justice or to preserve the integrity and reputation of the judicial process." *Bryan,* 868 F.2d at 1039 (quoting *United States v. Bustillo,* 789 F.2d 1364, 1367 (9th Cir.1986) (citations omitted)).

### 2. *The Missing Instruction*

■ The superseding indictment charged in count one that appellants

> ... did knowingly and wilfully combine, conspire and agree together to violate the laws of the United States, to wit: (1) to wilfully misapply and cause to be misapplied, monies, funds and credits belonging to, and entrusted to, the care, custody and control of [the Bank], in amounts in excess of $100.00, with intent to injure and defraud said bank, in violation of Title 18, United States Code, Sections 656 and 2; (2) to knowingly make and cause to be made false statements to [the Bank] upon applications for extensions of credit, in violation of Title 18, United States Code, Sections 1014 and 2; and (3) to knowingly make and cause to be made false entries in books, reports and statements of [the Bank], with the intent to injure and defraud said bank, in violation of Title 18, United States Code, Sections 1005 and 2.

The court's jury instruction on the conspiracy charge was in the disjunctive. The court told the jury:

> To establish the crime charged, the Government must prove four elements beyond a reasonable doubt:
>
> First, that there was an agreement to fraudulently misapply Mitsui Manufacturers Bank funds in connection with loan transactions, or that there was an agreement to knowingly make false statements on applications for extensions of credit, or that there was an agreement to make false entries in bank books, all with the intent to defraud the bank; ...
>
> Third, that one of the members of the conspiracy committed at least one of the so-called overt acts described in the indictment, with all of you agreeing on which of the overt acts was committed; and
>
> Fourth, that the overt act which you found was committed by one of the members of the conspiracy was committed for the purpose of carrying out the conspiracy.

Appellants contend the court was required to instruct the jury that they had to agree unanimously whether the object of the conspiracy was to misapply Bank funds, make false statements or make false entries in Bank records. The court did not give this kind of unanimity instruction.

When an indictment includes a single conspiracy count conjunctively alleging multiple offenses, a jury may convict by finding a conspiracy to commit any or all of the conjunctive acts alleged. *United States v. Mastelotto,* 717 F.2d 1238, 1248 n. 10 (9th Cir.1983) (citing *United States v. Abascal,* 564 F.2d 821, 832 (9th Cir.1977), *cert. denied,* 435 U.S. 953, 98 S.Ct. 1583, 55 L.Ed.2d 804 (1978)). A unanimity instruction as to the particular objects of a charged conspiracy is appropriate "where it appears that a conviction might rest upon different jurors having found the existence of different facts ... where the complex nature of the evidence, a discrepancy between the evidence and the indictment, or some other particular factor creates a genuine possibility of juror confusion." *United States v. Feldman,* 853 F.2d 648, 652 (9th Cir.1988) (quoting *United States v. Frazin,* 780 F.2d 1461, 1468 (9th Cir.), *cert. denied,* 479 U.S. 844, 107 S.Ct. 158, 93 L.Ed.2d 98 (1986)).

The evidence presented during the trial of this case was not complex and revealed only one conspiracy to defraud the Bank by committing the three offenses alleged. The jury did not request any additional instructions on the objects of the conspiracy and there was no discrepancy between the superseding indictment and the evidence. *See Bryan,* 868 F.2d at 1039. Moreover, the jury convicted both Castro and Cotter of aiding and abetting the misapplication of Bank funds and of making false entries in Bank records, substantive

offenses which were set out in the conspiracy count as objects of the conspiracy. The court had instructed the jury that any vote to convict on these substantive offenses had to be unanimous. The jury's guilty verdict on these substantive offenses establishes that the jury was unanimous in their determination of the existence of these objects of the conspiracy.

We conclude that the court's failure to give a specific unanimity instruction on the objects of the conspiracy was not plain error.

### B. *Sufficiency of Evidence*

Evidence is sufficient to support a conviction if, "viewing the evidence in the light most favorable to the prosecution and respecting the jury's ability to judge the credibility of the witnesses, resolve factual conflicts, and draw inferences, a rational jury could have found the elements of the crime beyond a reasonable doubt." *United States v. Feldman*, 853 F.2d at 654.

### 1. *Conspiracy*

■ Cotter alleges that he and Castro had a symbiotic relationship as business associates and that no substantial evidence showed any agreement to intentionally defraud the Bank.

The essential elements of a conspiracy are " 'an agreement to accomplish an illegal objective coupled with one or more overt acts in furtherance of the illegal purpose and the requisite intent necessary to commit the underlying substantive offense.' " *United States v. Melchor–Lopez*, 627 F.2d 886, 890 (9th Cir.1980) (quoting *United States v. Oropeza*, 564 F.2d 316, 321 (9th Cir.1977)).

The agreement to commit an unlawful act is the essence of the conspiracy. The prosecution need not show that the agreement was explicit; it may be inferred from the facts and circumstances of the case. *Iannelli v. United States*, 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975). An agreement may be found " 'if there be concert of action, all the parties working together understandingly, with a single design for the accomplishment of a common purpose.' " *United States v. Melchor–Lopez*, 627 F.2d at 890 (citing *United States v. Monroe*, 552 F.2d 860, 862–63 (9th Cir.), cert. denied, 431 U.S. 972, 97 S.Ct. 2936, 53 L.Ed.2d 1069 (1977).

Loan applicants testified they contacted Cotter, who then contacted Castro; that they met with both Cotter and Castro before their loans were approved; that they paid commissions out of loan proceeds to both Castro and Cotter; and that Castro and Cotter knew information in the loan applications was false. There was sufficient evidence from which the jury could conclude that Castro and Cotter had agreed to defraud the Bank by misapplying Bank funds, falsifying records or making false statements.

### 2. *Substantive Convictions*

Cotter challenges his convictions of aiding and abetting Castro under 18 U.S.C. § 2 in misapplying Bank funds, 18 U.S.C. § 656, and falsifying Bank records, 18 U.S.C. § 1005. He argues there was insufficient evidence to show Castro, as the principal, had the requisite intent to defraud the Bank, or that Cotter had the requisite intent to aid and abet the crimes.

#### a. *Misapplication of Bank Funds*

■ An executive officer of a bank which is connected in some capacity with the Federal Reserve System may be convicted of violating section 656 if he willfully misapplies bank funds with the intent to injure or defraud the bank. *United States v. Unruh*, 855 F.2d 1363, 1367 (9th Cir. 1987), cert. denied, —— U.S. ——, 109 S.Ct. 513, 102 L.Ed.2d 548 (1988). Funds are misapplied when they are disbursed under a record containing misrepresentations of fact with the intent to deceive bank officials, examiners or the Federal Deposit Insurance Corporation ("FDIC"). *United States v. Kennedy*, 564 F.2d 1329, 1339 (9th Cir.1977), cert. denied, 435 U.S. 944, 98 S.Ct. 1526, 55 L.Ed.2d 541 (1978). Intent to defraud may be inferred from a defendant's reckless disregard of the bank's interests. *United States v. Stozek*, 783 F.2d 891, 893 (9th Cir.), cert. denied,

479 U.S. 888, 107 S.Ct. 284, 93 L.Ed.2d 259 (1986). Intent to injure need not be shown if there is intent to deceive or defraud. *United States v. Wolf,* 820 F.2d 1499, 1503 (9th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 1222, 99 L.Ed.2d 423 (1988).

■ Witnesses testified that Castro and Cotter received commissions from loan applicants in exchange for approving the loans; that Cotter submitted loan applications containing false information to Castro; that Castro approved the loans either knowing some of the information was incorrect or without checking it; and that Cotter made concerted efforts to ensure Castro did not jeopardize his position at the Bank. One witness testified he was told by Castro that he did not have to repay his loan at all. The jury could infer beyond a reasonable doubt that Castro acted in reckless disregard of the Bank's interests and that Cotter aided and abetted Castro.

Cotter argues that Castro's conduct was validated by evidence which established his entitlement to two defenses compelling his acquittal; and, as a result, Cotter could not be convicted of aiding and abetting the "innocent" Castro. These arguments ignore the evidence and misinterpret the applicable law.

First, Cotter asserts there was no evidence that the money which was lent would not be repaid to the Bank. In this circuit, ability to repay is not a defense to misapplication of bank funds. *Wolf,* 820 F.2d at 1503. Furthermore, there was evidence that Castro knew at least one borrower had no intention of repaying the loan and did not do so.

Second, Cotter argues Castro's actions were authorized by the Bank because he was never reprimanded while the conspiracy was going on. Instead, Castro's lending limit was increased from $50,000 to $100,000, and the Bank renewed many of the loans he had made. Cotter also points out that during this time the Bank was reprimanded by the FDIC for poor lending practices but failed to provide any type of guidance manual to its officers. Therefore, according to Cotter, Castro was following Bank procedures and could not have had the requisite intent to misapply Bank funds.

Valid consent to banking activities by bank officials or the board of directors may be a limited defense to a section 656 charge. *Unruh,* 855 F.2d at 1368. Evidence of a bank's consent based on its policies is treated as "evidentiary matters [sic] that may be considered as part of the defense that there was either no willful misapplication or no intent to injure the bank." *Unruh,* 855 F.2d at 1368 (quoting *United States v. Cauble,* 706 F.2d 1322, 1353 (5th Cir.1983) (footnote omitted), *cert. denied,* 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984)).

While the evidence to which Cotter points may have had some probative value, there was nonetheless substantial evidence from which the jury could have concluded the Bank had no policy which authorized or approved of Castro's conduct. To the contrary, there was ample evidence that Castro intended to defraud the Bank by the loans he authorized, and that's what he did. In any event, the jury's verdict resolved any conflict in the evidence.

#### b. *Falsification of Bank Records*

Under section 1005, a person may be convicted of falsifying bank records if he made, or caused to be made, a false entry in the records, knowing the entry was false and with intent to injure or deceive the bank or a public official. *Wolf,* 820 F.2d at 1504. Cotter asserts he did not have the requisite intent to aid or abet Castro, pursuant to 18 U.S.C. § 2, in the making of such entries.

■ To convict a defendant of aiding and abetting a crime, a jury must find beyond a reasonable doubt that the defendant "willingly associated himself with a criminal venture and participated therein as something he wished to bring about." *United States v. Cloud,* 872 F.2d 846, 850 (9th Cir.1989), citing *United States v. Zemek,* 634 F.2d 1159, 1174 (9th Cir.1980), *cert. denied,* 450 U.S. 916, 101 S.Ct. 1359, 67 L.Ed.2d 341 (1981). The abettor's criminal intent may be inferred from circumstantial

evidence, and the government must prove only that the abettor intended to assist the perpetrator of the crime. *Id.*

■ Witnesses testified at trial that Castro was aware that loan applications contained false statements, and that in some instances applicants told Castro the information was false. Loan applicants also testified Cotter had provided them with false local addresses for their applications and that he recorded false information about their businesses and financial assets on the applications. The jury could decide from this testimony that both Castro and Cotter acted willfully and with knowledge that information in the loan applications was false.

### C. *Wharton's Rule*

■ Cotter argues Wharton's Rule prohibits his conviction of both conspiracy to commit the crimes of misapplication of Bank funds and falsification of Bank records, and aiding and abetting the commission of those substantive crimes.

#### 1. *Standard of Review*

Cotter raises this issue for the first time on appeal. As a general rule, this circuit will not consider an issue initially raised on appeal. *Bolker v. C.I.R.*, 760 F.2d 1039, 1042 (9th Cir.1985). However, we may review such an issue where it is purely one of law and either does not rely on the factual record or the record has been fully developed. *Id.* Whether a defendant may be convicted of both conspiracy and aiding and abetting the substantive offense is a question of statutory construction reviewed de novo. *Iannelli,* 420 U.S. at 782, 95 S.Ct. at 1292; *United States v. Gallardo,* 773 F.2d 1496, 1501 (9th Cir.1985).

#### 2. *Analysis*

Wharton's Rule is a "judicial presumption" used as a tool for statutory interpretation in the absence of contrary legislative intent. *Iannelli,* 420 U.S. at 782, 95 S.Ct. at 1292; *United States v. Huber,* 772 F.2d 585, 591 n. 5 (9th Cir.1985). It provides that "[a]n agreement by two persons to commit a particular crime cannot be prosecuted as a conspiracy when the crime is of such a nature as to necessarily require the participation of two persons for its commission." *Iannelli,* 420 U.S. at 773–74 n. 5, 95 S.Ct. at 1287–88 n. 5.

The rule applies only to those offenses requiring concerted criminal activity and congruence between the agreement and the offense, such as adultery, incest, bigamy and dueling. *Id.* at 782, 785, 95 S.Ct. at 1292, 1293. The parties to the agreement are the only persons participating in the substantive offense, the immediate consequences of the crime rest solely on the participants, and the agreement constituting the substantive offense is unlikely to pose any threat to society which conspiracy laws are intended to prevent, such as a continuing pattern of criminal conduct. *Id.* at 782–84, 95 S.Ct. at 1292–93.

Cotter asserts aiding and abetting necessarily requires the participation of two parties and therefore cannot be punished separately as a conspiracy. This court has rejected such reasoning. *Huber,* 772 F.2d at 591. Aiding and abetting does not require an agreement between two parties, a necessary prerequisite for a conspiracy conviction. *United States v. Herbert,* 698 F.2d 981, 985 (9th Cir.), *cert. denied,* 464 U.S. 821, 104 S.Ct. 87, 78 L.Ed.2d 95 (1983).

### D. *Severance*

Castro and Cotter appeal the district court's failure to grant their motions for severance.

#### 1. *Standard of Review*

■ We review a trial court's decision to deny a motion for severance for abuse of discretion. *Unruh,* 855 F.2d at 1374; *United States v. Wyatt,* 807 F.2d 1480, 1482 (9th Cir.), *cert. denied,* 484 U.S. 858, 108 S.Ct. 170, 98 L.Ed.2d 124 (1987). The test is whether a joint trial is so manifestly prejudicial that the trial judge is required to exercise his or her discretion in only one way—by severing the trial. *Id.* A defendant must show clear, manifest or undue prejudice and violation of a substantive right resulting from the failure to sever.

*Unruh,* 855 F.2d at 1374; *United States v. Little,* 753 F.2d 1420, 1446 (9th Cir.1984).

### 2. *Castro's Appeal*

■ Castro contends his motion for severance should have been granted after a loan applicant, Joseph M. Curtis, testified he used cocaine in Cotter's presence and had a subsequent drug conviction. Castro asserts this testimony could have resulted in his conviction based on guilt by association with Cotter and the witness.

To warrant severance based on guilt by association, the moving party must show actual prejudice where the association is based on an unappealing habit or lifestyle. *United States v. Jackson,* 549 F.2d 517 (8th Cir.), *cert. denied,* 430 U.S. 985, 431 U.S. 923, 968, 97 S.Ct. 1682, 2195, 2928, 52 L.Ed.2d 379, 53 L.Ed.2d 236, 1064 (1977). The judge denied the motion to sever after holding an *in limine* conference in which he stressed to counsel that the drug conviction at issue occurred subsequent to the time the conspiracy took place. The judge also gave a limiting instruction to the jury explaining that the witness's conviction was unrelated to either appellant but was relevant only to the credibility of the witness.

Castro has made no showing of actual prejudice. The court did not abuse its discretion in refusing to sever the trial.

### 3. *Cotter's Appeal*

#### a. *Confrontation Clause*

■ Cotter argues his sixth amendment right to confront Castro as a witness was violated by the court's denial of his motion to sever. The prosecution read to the jury portions of Castro's deposition in which Castro said he had never been employed by Cotter but had received $1,000 for organizing Cotter's paperwork. Cotter asserts he was denied the right to cross-examine Castro about these statements because Castro chose not to testify. This argument is without merit. Cotter verified Castro's statements in his own deposition, which also was read to the jury. He therefore cannot argue he was prejudiced by Castro's deposition statements.

#### b. *Right to Remain Silent*

■ Cotter next contends that during closing argument Castro's counsel violated Cotter's fifth amendment right to refrain from testifying. In drawing the jury's attention to a discrepancy in the statements of two trial witnesses regarding events at a meeting attended by Cotter, Castro's counsel told the jury:

> It seems that these two guys, prior to getting their depositions locked in, didn't get together and coordinate it. But you have Post saying the opposite, nothing was said, and Thompson saying that the points were to go to the banker, and the declarant [Cotter] hasn't taken the stand.

A comment on a defendant's failure to testify is improper and may be grounds for reversal if it could have affected the verdict. *United States v. Patterson,* 819 F.2d 1495, 1506 (9th Cir.1987) (citing *United States v. Moreno–Nunez,* 595 F.2d 1186, 1187 (9th Cir.1979)); *United States v. Pruitt,* 719 F.2d 975, 978 (9th Cir.), *cert. denied,* 464 U.S. 1012, 104 S.Ct. 536, 78 L.Ed.2d 716 (1983).

In *Patterson,* counsel for one defendant told the jury his client was different from the other defendants because he had "taken the stand and faced his accusers. He's allowed himself to be cross-examined. He has no obligation to do that in this country." *Patterson,* 819 F.2d at 1506. The court found these comments, while improper, "did not cross the line of reversible error" because they only indirectly referred to the other defendants. *Id.* The statements made by Castro's counsel in the present case are even less direct. They did not create any inference of guilt by silence. *See Id.*

#### c. *Exculpatory Testimony*

■ Cotter asserts he was deprived of the right to call Castro as a witness to testify on his behalf. He argues there was a "likelihood" Castro would have presented exculpatory testimony, based on Castro's testimony in a prior, unrelated case involv-

ing one of the loan applicants, if the two had been tried separately.

A party moving for severance based on the need for a codefendant's testimony must show that he or she would call the codefendant to testify, that the codefendant would testify and that the testimony would be favorable to the moving party. *Little,* 753 F.2d at 1446 (citation omitted). The district court must then consider the weight and credibility of the proposed testimony and the economy of severance. *Id.*

Cotter asserts only that it was likely that Castro would testify. There is no showing that Castro offered or agreed to testify on Cotter's behalf, or that he would have so testified if the trials had been severed. Cotter failed to make the necessary foundational showing in support of his severance motion on this ground.

### 4. *Complexity of Evidence*

█ Both Castro and Cotter contend the complexity of the evidence presented to the jury, combined with the number of counts in the superseding indictment, mandated severance. The primary concern in assessing the prejudicial effect of a joint trial is whether the jury reasonably can be expected to compartmentalize evidence pertaining to each defendant. *Unruh,* 855 F.2d at 1374; *United States v. Douglass,* 780 F.2d 1472, 1479 (9th Cir.1986) (citing *United States v. Escalante,* 637 F.2d 1197, 1201 (9th Cir.), *cert. denied,* 449 U.S. 856, 101 S.Ct. 154, 66 L.Ed.2d 71 (1980)). Factors to consider include the volume of evidence and its limited admissibility. *Douglass,* 780 F.2d at 1479. The prejudicial effect may be overcome by instructions regarding admissibility of evidence as to each defendant. *Id.* at 1479. The jury is presumed to have followed these instructions. *United States v. Van Cauwenberghe,* 827 F.2d 424 (9th Cir.1987), *cert. denied,* 484 U.S. 1042, 108 S.Ct. 773, 98 L.Ed.2d 859 (1988). Failure to convict on all counts is the best evidence of a jury's ability to compartmentalize evidence. *Unruh,* 855 F.2d at 1374. Here, neither appellant was convicted on all counts. The jury hung on both appellants on one count, and

acquitted both appellants on six other counts.

Most evidence adduced at trial applied to both Castro and Cotter. Witnesses described a scheme involving both appellants and meetings which both attended. The trial judge cautioned the jury that one witness testified he used cocaine only in front of Cotter and not Castro; that another witness's testimony pertained in some parts to Castro and in others to Cotter and that the jury had to be sure to separate the parts; and that the jury had to consider each defendant separately and find each defendant guilty beyond a reasonable doubt on each count.

The court did not abuse its discretion in refusing to sever the trial based on complexity of the evidence.

### E. *Cumulative Errors*

Appellants argue the trial judge committed a number of evidentiary errors which, taken as a whole, had such a cumulative impact on the verdict that the appellants were denied a fair trial. *See United States v. McLister,* 608 F.2d 785, 788 (9th Cir. 1979). We disagree.

A district court's evidentiary rulings are reviewed for abuse of discretion. Having reviewed the record carefully, we conclude that the district court did not abuse its discretion in any of its evidentiary rulings. Therefore, there are no individual errors to be combined to produce the reversal the appellants seek.

The evidentiary rulings challenged by the appellants are the following:

### 1. *Subsequent Conviction of Witness*

█ Cotter argues the court erred in allowing Curtis, a government witness, to testify on direct examination that he had been convicted of possessing cocaine with intent to distribute after the time the alleged conspiracy took place. Cotter contends this statement violated Fed.R.Evid. 403 because its prejudicial effect outweighed its probative value.

During a conference *in limine,* the trial judge ordered that the prosecution estab-

lish during preliminary questioning that the witness had been convicted after the conspiracy was alleged to have taken place. Because Curtis was serving his sentence at the time he testified, the court wanted the jury to know why he wore prison clothes.

On direct, the prosecution asked, and Curtis answered:

Q Now, where were you living in May, 1982, when you got the loan?

A I was living in Manhattan Beach.

Q And is that in the Los Angeles area?

A Yes, it is.

Q And what was your primary occupation at that time?

A I was involved in the sale of narcotics and also—that was my primary—

Q Now, sir, addressing that, are you currently incarcerated?

A Yes, I am.

Q And were you convicted in 1983 of possessing cocaine with intent to distribute?

A Yes, I was.

Following cross-examination, the prosecution examined Curtis on redirect to emphasize that the conviction to which he had testified took place after the loan transaction and had nothing to do with Castro or Cotter:

Q Mr. Curtis, am I correct in stating that your 1983 conviction has absolutely nothing to do with these defendants?

A Yes.

This testimony by Curtis was not unduly prejudicial. It explained why Curtis appeared in prison garb. He was serving time for a conviction that had nothing to do with the appellants. The district court did not violate Fed.R.Evid. 403 by admitting this testimony.

### 2. *Evidence of Drug Use*

■ Cotter also argues the trial court violated Fed.R.Evid. 403 by allowing witnesses to testify that they had used drugs in Cotter's presence. The prosecution contends these statements properly were admitted to show Cotter's state of mind as to the creditworthiness of the loan applicants.

Curtis, who was a loan applicant, testified he used cocaine in front of Cotter. A second loan applicant, Gandy, testified he also used drugs in front of Cotter and told Cotter he had obtained the drugs from a loan shark. Another witness, Post, testified Cotter had told him that a prospective borrower was an associate and had been a professional mercenary in South America.

While this testimony may have had some prejudicial effect as to Cotter, it was relevant to Cotter's state of mind concerning the creditworthiness of the applicants whose loan applications he obtained for the purpose of getting money from the Bank, with Castro's authorization, to fund the loans. The court did not violate Fed.R. Evid. 403 in admitting this evidence.

### 3. *Loan Files*

■ Cotter alleges that exculpatory evidence originally contained in the Bank's loan files was suppressed and the files therefore should not have been admitted into evidence.

A defendant may not claim a violation of due process rights where he has failed to show that any exculpatory material was suppressed or removed by the prosecution. *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963). During a sidebar conference, the court repeatedly requested that counsel supply specific information regarding what was missing from the files. Castro's counsel admitted that he was referring to materials removed by Bank attorneys, not by the prosecution, and used during prior civil actions. Cotter's *Brady* argument is meritless.

### 4. *Cotter's Statements*

■ Cotter contends the court erred in allowing witnesses to testify about statements he made to them. He asserts the statements were inadmissible hearsay under Fed.R.Evid. 804(b)(3) because they were not contrary to his pecuniary or proprietary interests and did not tend to expose him to criminal liability.

Statements by party-opponents are not hearsay and are admissible provided the

statement is offered against the party and is the party's own statement. Fed.R.Evid. 801(d)(2)(A). *See Patterson,* 819 F.2d at 1504; *United States v. Taylor,* 802 F.2d 1108, 1117 (9th Cir.1986), *cert. denied,* 479 U.S. 1094, 107 S.Ct. 1309, 94 L.Ed.2d 164 (1987). The district court did not err in admitting the statements.

### 5. *TRW Records*

 Castro and Cotter contend the admission of TRW credit reports into evidence under the business records exception to the hearsay rule, Fed.R.Evid. 803(6), was plain error because no foundation was laid and there was no showing that a person with knowledge of the contents of the reports had made the records. Appellants also argue admission of the reports violated their sixth amendment right to cross-examine witnesses.

These arguments are without merit. The TRW reports were introduced to show what information was available to Castro at the time he approved the loans, and to illustrate his reckless disregard for the Bank's interests by failing to act in response to the information disclosed by the reports.[1]

The credit reports were not introduced for the truth of their contents. They were not hearsay. Fed.R.Evid. 801(c), and there was no violation of the appellants' sixth amendment confrontation rights.

### 6. *Judicial Bias*

 Finally, appellants contend the trial judge should have recused himself for bias after making prejudicial statements during the trial. A party seeking recusal of a judge based on personal bias or prejudice must file a "timely and sufficient" motion for recusal. 28 U.S.C. § 144. We have held that a motion for recusal filed weeks after the conclusion of trial is presumptively untimely absent a showing of good cause. *United States v. Studley,* 783 F.2d 934, 939 (9th Cir.1986). No motion has been filed, and no argument has been

presented indicating any good cause for such failure. Appellants therefore are foreclosed from arguing this issue.

### F. *Expert Testimony*

Appellants contend expert testimony was admitted improperly because the expert expressed an opinion on an ultimate issue of fact which only the jury should have decided.

 A trial court has discretion to decide whether expert testimony should be admitted, and that decision will not be overturned unless it was manifestly erroneous. *United States v. Kinsey,* 843 F.2d 383, 388 (9th Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 2882, 101 L.Ed.2d 916 (1988). Under Fed.R.Evid. 704, opinion testimony may encompass an ultimate issue of fact provided it is not an opinion on the defendant's mental state where mental state is an element of the crime charged. *Kinsey,* 843 F.2d at 388. An expert also may not testify as to the guilt or innocence of a defendant. *Id.*

 Appellants contend that government expert Richard Starr's testimony, based on his review of loan files, that "none of these twenty-one loans should have ever been granted" was an opinion on Castro's mental state at the time he made the loans. Appellants also challenge Starr's testimony on redirect that a lending officer with Castro's background would not have made loans like the ones made by Castro.

A bank officer who makes loans to "financially incapable" applicants, with the intent to injure or defraud a bank, may be found guilty of misapplication of bank funds. *Unruh,* 855 F.2d at 1375 (citation omitted). Starr's opinion went to the creditworthiness of the borrowers based on his review of the loan files, not to Castro's intent at the time he made the loans.

Additionally, the court instructed the jury to give Starr's testimony only the weight they felt it deserved in light of his education and experience, and that the ju-

---

1. An expert witness for the government testified that of twenty-one loans made by *Castro, two* credit checks were performed prior to their ap-proval, and none of the assets listed on the reports was verified.

rors had to find the appellants acted with the specific intent to defraud the Bank before they could convict. The admission of the expert testimony was not manifestly erroneous. *See Kinsey*, 843 F.2d at 388.

### G. *Sentencing*

 Cotter contends his sentence should be vacated because he was sentenced to a longer term of years than was Castro, the principal. Cotter received consecutive sentences of two years for conspiracy, two years for aiding and abetting the misapplication of Bank funds and one year for aiding and abetting in falsifying Bank records. He also received five years probation. Castro received a five-year sentence for each of the charges of conspiracy and aiding and abetting in misapplying Bank funds, and a two-year sentence for aiding and abetting in falsifying Bank records. Each sentence was suspended on condition that Castro spend 179 days in prison consecutively for each charge, for a total incarceration of 537 days. Castro also was placed on probation for five years.

We review a district court's sentencing decision for abuse of discretion. *United States v. Meyers*, 847 F.2d 1408, 1416 (9th Cir.1988); *United States v. Messer*, 785 F.2d 832, 834 (9th Cir.1986).

Cotter contends his sentence should not be greater than Castro's because Castro was the principal architect of the scheme to defraud the Bank, had direct control over the approval of loans, owed a fiduciary duty to the Bank, and was the "major player" in the conspiracy. He also argues the district judge erred by not explaining the disparity in the sentences.

Generally, the imposition of disparate sentences alone is not an abuse of discretion. *Meyers*, 847 F.2d at 1416 (citing *United States v. Endicott*, 803 F.2d 506, 510 (9th Cir.1986)). A judge is not required to give reasons for a disparate sentence in the absence of any evidence that a defendant is being punished for exercising his right to stand trial. *United States v. Gar-*

*rett*, 680 F.2d 650, 652 (9th Cir.1982) (citing *United States v. Capriola*, 537 F.2d 319 (9th Cir.1976)). Here, Castro and Cotter had their trial. Thus, "there is no suggestion of an infringement upon [their] constitutional right to stand trial." *Id.* Moreover, as we have previously recounted, there was sufficient evidence for the court to find that Cotter played a substantial role in the conspiracy. The sentencing judge presided over the trial and was familiar with the evidence. He did not abuse his discretion in assessing Cotter a sentence disparate to that received by Castro.

AFFIRMED.