[Cite as *State v. Bright*, 2016-Ohio-6973.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. 14 MA 0058 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| TIANT BRIGHT | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:     Criminal Appeal from the Court of
                              Common Pleas of Mahoning County,
                              Ohio
                              Case No. 12 CR 1292

JUDGMENT:                     Affirmed.

APPEARANCES:

For Plaintiff-Appellee:       Atty. Paul J. Gains
                              Mahoning County Prosecutor
                              Atty. Ralph M. Rivera
                              Assistant Prosecuting Attorney
                              21 West Boardman Street, 6th Floor
                              Youngstown, Ohio  44503

For Defendant-Appellant:      Atty. Timothy J. Cunning
                              Scullin & Cunning, LLC
                              940 Windham Court, Suite 4
                              Boardman, Ohio  44512

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Carol Ann Robb

                              Dated:  September 22, 2016

WAITE, J.

**{¶1}** Appellant Tiant Bright ("Bright") appeals his conviction on felonious assault with an accompanying firearm specification and improperly discharging a firearm at or into a habitation with two accompanying firearm specifications in the Mahoning County Common Pleas Court. Bright raises two assignments of error, asserting the trial court erred in failing to sever Bright's trial from that of his co-defendant and by denying Bright's request for a continuance. Based on the foregoing, both of Bright's assignments of error are without merit and the judgment of the trial court should be affirmed.

Factual History

**{¶2}** In early December of 2012, Summer Romeo ("Romeo") contacted Jesse Grate ("Grate") about performing repairs on her SUV. Grate arranged for his cousin to do the repairs at Grate's home where Grate resided with his fiancée and their three children. On December 5, 2012 Romeo called Grate and complained that the SUV still was not working properly. Grate had her bring the vehicle back to his house so he could look at it himself. After a while, Romeo left with the SUV, only to call Grate later that day to inform him that the SUV was still not getting heat and that the oil dip stick was broken. She continued to call and text Grate throughout the day. Later that afternoon Romeo met Grate at his house, accompanied by her friend, Damari Rodriguez. Grate testified that it was a "friendly conversation" but that Romeo wanted her SUV repaired. Grate added antifreeze to the SUV and Romeo eventually left, apparently satisfied, shortly after 5:05 p.m.

**{¶3}** Around 7:00 p.m., Romeo and Rodriguez, now accompanied by Appellant Tiant Bright ("Bright") and Eric Velasquez, confronted Grate at his house about the repairs. Bright demanded that Grate give them $40 for the broken dipstick, but Grate said he would purchase a new part himself, as it did not cost $40. Grate, Romeo and Bright began to argue about the situation. Grate testified that Bright started threatening him and his family. (Trial Tr., pp. 231-232.) Grate's fiancée, Penny Yates, approached and also entered into the conflict. She testified that Bright stated, "I will be back." (Trial Tr., p. 432.) Grate testified that they got back into the SUV and Bright told Romeo to take him to "Laclede [so he could] go get [his] gun." (Trial Tr., p. 232.)

**{¶4}** Shortly before 8:00 p.m., Romeo's SUV pulled up in front of Grate's house. This incident has been referred to as "Incident One" throughout the proceedings. (Two additional interactions occurred that same evening and have been referred to as "Incident Two" and "Incident Three" for clarification purposes). Grate testified that Romeo was driving and Bright was sitting behind her. At some point, Bright stuck his hand, holding what appeared to be a handgun, outside of the vehicle and shot off several rounds "kind of towards the house but mostly like at the air." (Trial Tr., pp. 232-233.) Grate was standing on his front porch with Yates and three other individuals. Grate called 911 at 7:48 p.m. The police arrived and spoke to Grate, who gave a police report including a description of the vehicle. Grate and Yates both testified that Romeo and Bright continued driving up and down the street in front of the house, now followed by a second vehicle, a large pickup truck. (Trial

Tr., p. 235.) Romeo continued sending threatening texts after the first incident. Grate testified he decided that Yates and the children should leave the house for the rest of the evening. (Trial Tr., p. 234.)

**{¶5}** Around 8:30 p.m., both vehicles pulled up in front of Grate's home, although Grate was now at his neighbor's house only a few houses away. (Trial Tr., p. 236.) Grate heard gunshots which he believed came from the truck as it was stopped in front of his house. (Trial Tr., p. 316.) Grate then testified that he, his cousin and a few others hunkered down in his house with the lights out and blankets and garbage bags covering the windows to avoid detection by Romeo and Bright in the event the hostilities continued. (Trial Tr., pp. 237-238.) Shortly thereafter, Grate's friend informed him that individuals were approaching the house through the backyard. Grate noticed an individual wearing a hoodie similar to the one he had seen Bright wearing earlier that evening. (Trial Tr., pp. 239-240.) Grate called 911 and was still on this call when the house was hit by several gunshots. (Trial Tr., pp. 241-242.) After the gunshots died down, Grate testified he went out on the front porch and saw Romeo's SUV drive down the street, make a U-turn and head back up the street. (Trial. Tr., p. 242.)

**{¶6}** Police arrived shortly thereafter to investigate the scene and interview any witnesses. Having a full description of Romeo's SUV, the police later stopped Romeo driving the vehicle at approximately 11:00 p.m. Romeo, the only person inside, was detained and the vehicle was towed.

**{¶7}** Bright was indicted by the Grand Jury on January 3, 2013 on two counts of felonious assault in violation of R.C. 2903.011(A)(2) with an accompanying firearm specification pursuant to R.C. 2941.145(A); one count of improperly discharging a firearm at or into a habitation in violation of R.C. 2923.161(A)(1); with two accompanying firearm specifications pursuant to R.C. 2941.145(A) and R.C. 2941.146(A).

**{¶8}** A joint jury trial with co-defendant Romeo commenced March 3, 2014. Bright was ultimately convicted of felonious assault in violation of R.C. 2902.11(A)(2), a felony of the second degree, with an accompanying firearm specification in violation of R.C. 2941.145(A); and improperly discharging a firearm at or into a habitation in violation of R.C. 2923.161(A)(1), a felony of the second degree, with two accompanying firearm specifications, in violation of R.C. 2941.145(A) and R.C. 2941.146(A).

**{¶9}** On May 14, 2014, the trial court sentenced Bright to six (6) years of incarceration for felonious assault; three (3) years for the accompanying R.C. 2941.145(A) firearm specification; six (6) years for improperly discharging a firearm at or into a habitation; three (3) years for the R.C. 2941.145(A) accompanying firearm specification; and five (5) years for the R.C. 2941.146(A) accompanying firearm specification. The convictions for felonious assault and improperly discharging a firearm at or into a habitation were to run concurrently, but consecutively by law to the firearm specifications, for a stated prison term of seventeen (17) years.

**{¶10}** Bright filed this timely appeal, raising two assignments of error:

## FIRST ASSIGNMENT OF ERROR

The Trial Court Erred by Refusing to Sever the Co-Defendants.

**{¶11}** In his first assignment of error, Bright contends the trial court erred when it failed to sever his trial from that of his co-defendant, Summer Romeo. He asserts that comments made by Romeo prior to commencement of the trial contained exculpatory evidence, and Bright was prevented from calling Romeo as a witness in his case due to her status as a co-defendant.

> Joinder of defendants and the avoidance of multiple trials is favored in the law for many reasons. Joinder conserves judicial and prosecutorial time, lessens the not inconsiderable expenses of multiple trials, diminishes inconvenience to witnesses, and minimizes the possibility of incongruous results in successive trials before different juries.

*State v. Thomas,* 61 Ohio St.2d 223, 225, 400 N.E.2d 401 (1980).

**{¶12}** Pursuant to Crim.R. 14, if it appears that a defendant is prejudiced by joinder of a co-defendant, the trial court may grant a motion for severance. However, the burden is on the defendant to prove that the joinder is prejudicial. *State v. Kozic,* 7th Dist. No. 11 MA 160, 2014-Ohio-3788, ¶ 69. "The test is 'whether a joint trial is so manifestly prejudicial that the trial judge is required to exercise his or her discretion in only one way – by severing the trial. * * * A defendant must show clear, manifest and undue prejudice and violation of a substantive right resulting from failure to sever." *State v. Schiebel,* 55 Ohio St.3d 71, 89, 564 N.E.2d 54 (1990), citing *United States v. Castro*, 887 F.2d 988, 998 (9th Cir.1989).

[J]oinder of defendants is proper so long as all defendants participated in the same series of transactions leading to the charges even though not all defendants participated in every act. * * * Not all defendants need be charged in each count * * * nor would differing levels of culpability among defendants necessarily justify severance.

*State v. Bundy,* 7th Dist. No. 02 CA 211, 2005-Ohio-3310, ¶ 53, quoting *Schiebel* at 88-89.

**{¶13}** An appellate court reviews a trial court's denial of a motion for severance for abuse of discretion. *State v. Lott,* 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990). Abuse of discretion is more than an error or judgment but, rather, implies that the court's determination was unreasonable, arbitrary or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

**{¶14}** In the instant matter, Bright was indicted along with his co-defendant, Romeo, on January 3, 2013. Bright contends that Romeo's statements made in open court prior to the commencement of trial are tantamount to exculpatory evidence and required that the trials be severed. Appellant cites to a discussion in which the trial court engaged with Bright and Romeo who were each present with separate counsel. This discussion was held outside of the jury's presence. It regarded some preliminary matters. The record reveals the following colloquy occurred:

[**COUNSEL FOR ROMEO**]: One moment, Your Honor. Your Honor, may -- after discussions with my client I believe she would wish to

address the Court. I believe she would like to terminate my services as of this morning, Your Honor.

**THE COURT**: Miss Romeo, is that a correct statement by [your counsel]?

**DEFENDANT ROMEO**: I would like to hire an attorney and pay an attorney because I'm not going -- this is all wrong.

**THE COURT**: What is it that you believe [your counsel] has done or not done that would interfere in any way with your ability to proceed today with him at [sic] as your attorney?

**DEFENDANT ROMEO**: Because they've got the wrong man, and I don't want to go to prison for something I didn't do.

**THE COURT**: Miss Romeo, do you understand that [your counsel] has in no way represented to this Court or to anyone else that you've done anything whatsoever wrong nor has he suggested to this Court or anyone else on the record in this court that you should be found guilty of anything or plead to anything? He has been appointed to represent you and he continues to represent you on the basis of maintaining your innocence in connection with the charges that are before the Court at the present time?

**DEFENDANT ROMEO**: I understand that but they're trying to offer my co-defendant to plead to the firearm. He was never even in the picture. The man that actually supposed to be here isn't even here. The man that they never charged is the man that did this.

(Trial Tr., pp. 20-21.)

**{¶15}** A short time later, counsel for Bright requested the matter be severed:

[**COUNSEL FOR BRIGHT**]: Yes, Your Honor. In light of the statements that the co-defendant, Summer Romeo, made, the defense for Mr. Bright asks that this matter be severed in light of the contentions made by the co-defendant, not that they're on the record. There has to be some way in which counsel for Mr. Bright can attempt to bring Miss Romeo before the Court as a witness, and clearly that can't happen with her being a co-defendant. So at this time I'm asking for a continuance and an opportunity and a separate trial for Mr. Bright so that, based on the allegations and contentions and acknowledgments, that Miss Romeo made on that record that --

**THE COURT**: Which are not under oath and do not have any formal standing with respect to any action of the Court other than as part of the Court's effort to satisfy himself that, in fact, Miss Romeo understands what she's doing at this point.

(Trial Tr., pp. 27-28.)

{¶16} It appears that Romeo's comments, when examined in their entirety and within context, are not exculpatory in nature. Bright's contentions to the contrary are speculative at best. The comments amounted to an assertion of Romeo's own innocence during the court's colloquy regarding any potential plea agreement, rather than as actual evidence about the extent of Bright's involvement. In fact, she appears to complain about the plea deal offered to Bright, who would undoubtedly be called upon to testify against her at trial should he accept. As the trial court also noted, her comments were not sworn testimony, but were arguments to the court during a plea colloquy. Taken together, her comments do not rise to the level of exculpatory evidence for Bright, as he urges.

{¶17} The admissibility of Romeo's statements is also questionable. The statements were made prior to trial as part of a colloquy with the judge during plea discussions. Evid.R. 410(A)(5) precludes such statements from being admissible: "any statement made in the course of plea discussions in which counsel for the prosecuting authority or for the defendant was a participant and that do not result in a plea of guilty or that result in a plea of guilty later withdrawn." Evid.R. 410(A)(5). Neither Romeo nor Bright entered into plea agreements. As such, the statements arguably lack admissibility, as they were made in the context of plea discussions which did not ultimately result in a guilty plea.

{¶18} Bright bears the burden of "affirmatively showing that his rights were prejudiced" and that the trial court abused its discretion in failing to sever the trials. *State v. Torres*, 66 Ohio St.2d 340, 421 N.E.2d 1288 (1981), syllabus. Although

Bright contends that severance was necessary so that his right to call Romeo as a witness could be protected, his argument is highly speculative. Assuming the trial court did sever, Romeo would not be required to testify if called and could, and arguably would, assert her right against self-incrimination in this matter. Romeo's status as a participant in this crime does not change. Fifth Amendment rights against self-incrimination apply to all witnesses in criminal and civil proceedings. *Lefkowitz v. Turley*, 414 U.S. 70, 76, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973). As such, Bright has not affirmatively demonstrated a "clear, manifest and undue prejudice and violation of a substantive right" resulting from the trial court's failure to sever the trials in the instant matter. *Schiebel,* at 89, citing *United States v. Castro, supra*, at 998.

**{¶19}** Without a showing of clear and manifest prejudice, the trial court did not abuse its discretion when it denied Bright's request to sever his trial from that of Romeo. Bright's first assignment of error is without merit and is overruled.

## SECOND ASSIGNMENT OF ERROR

The Trial Court Erred by Refusing to Grant a Continuance.

**{¶20}** In his second assignment of error, Bright contends the trial court erred in refusing to grant him a continuance. "The grant or denial of a continuance is a matter that is entrusted to the broad, sound discretion of the trial judge." *State v. Unger*, 67 Ohio St.2d 65, 423 N.E.2d 1078 (1981), syllabus. An appellate court will not reverse a denial of a continuance absent an abuse of discretion. *Id.* at 67. An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 444 (1980).

**{¶21}** An appellate court's review of a denial of a motion for a continuance requires the application of a balancing test where we must weigh the trial court's interest in controlling its docket and the public's interest in the prompt, efficient dispatch of justice versus any prejudice to the moving party. *Unger* at 67; see, also *Fiocca v. Fiocca*, 10th Dist. No. 04AP-962, 2005-Ohio-2199, at ¶ 6; *Seget v. Seget,* 8th Dist. No. 83905, 2004-Ohio-6209, at ¶ 10.

**{¶22}** The Ohio Supreme Court in *Unger, supra,* articulated factors that a trial court should consider when determining whether to grant a motion for continuance:

> [T]he length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstances which gives rise to the request for continuance; and other relevant factors, depending on the unique facts of each case.

*Id.* at 67-68.

**{¶23}** Bright again relies on his belief that Romeo's pre-trial statements rise to the level of exculpatory evidence. Bright's request for continuance relied entirely on Romeo's comments that "[b]ecause they've got the wrong man, and I don't want to go to prison for something I didn't do" and "[h]e was never even in the picture. The man that actually supposed to be here isn't even here. The man that they never charged is the man that did this." Both statements, viewed in a vacuum, arguably

might appear to be helpful to Bright's defense. (Trial Tr., pp. 20-21.) However, the trial court was not operating in a vacuum: it was conducting a colloquy with a defendant attempting to assert her own innocence in the midst of a discussion regarding a potential plea agreement. Bright argues that Romeo's non-testimonial statements indicate that she had more information to provide regarding Bright's role in the crime. As a co-defendant, it is highly likely Romeo had more information as to what transpired that evening. There is no surprise to the participants in that regard. While Bright acknowledges that Romeo had made no prior statements that might be exculpatory, he ignores all of the direct eyewitness testimony in this case inculpating him, including testimony by Grate placing him in the car the night of the incident and with the gun. Bright's assertions regarding Romeo's statements are speculative at best, and usefulness by Bright, in light of all other evidence, does not rise to the level of prejudice warranting a continuance when balanced against the other interests. Romeo's comments did not constitute new evidence which would require the court to grant a continuance in order to allow Bright's counsel to investigate further. Moreover, the non-testimonial statements themselves appear inadmissible under the evidence rules, as they were made within the context of plea negotiations, and could not have been presented to the jury by a court reporter or sheriff deputy as Bright contends. Moreover, Romeo's statements that she and her co-defendant are innocent are, in themselves, not exculpatory. Accordingly, given the particular circumstances of this case, the trial court did not abuse its discretion in denying

Bright's motion for a continuance. Bright's second assignment of error is without merit and is overruled.

{¶24} Consequently, based on the foregoing, Appellant's two assignments of error lack merit and are overruled. The judgment of the trial court is affirmed.

Donofrio, P.J., concurs.

Robb, J., concurs.