OPINION
{¶ 1} Defendant-appellant Andre Bundy appeals the decision of the Mahoning County Common Pleas Court that found him guilty of aggravated robbery and conspiracy to commit aggravated robbery and sentenced him to maximum, consecutive sentences on each count. This appeal raises five issues. The first issue is whether the indictment for conspiracy was in conformity with State v. Childs, 88 Ohio St.3d 194, 2000-Ohio-298. Second, whether the trial court erred when it denied his motion to suppress the statement he made to the police. Third, whether the trial court erred when it overruled Bundy's motion to sever his trial from the trials of co-defendants Brandon Moore and Chaz Bunch. Fourth, whether the trial court erred when it denied his motion for a new trial. Lastly, whether the trial court erred when it imposed the maximum sentence on the aggravated robbery conviction. For the reasons stated below, Bundy's conviction and sentence is affirmed in part and vacated in part.
 STATEMENT OF FACTS {¶ 2} This case involves a series of incidents that occurred on the evening of August 21, 2001. That night, Bundy was driving Chaz Bunch, Brandon Moore and Bundy's cousin, Jamar Callier, around Youngstown, Ohio in his car. They were in the car parked across from Jason Cosa's home in Youngstown when Cosa arrived there in his vehicle with his grandfather and girlfriend. As Cosa pulled into his driveway, Moore ran up to the vehicle and demanded at gunpoint that Cosa give him money. Cosa gave the masked Moore his fanny pack, containing all his money and certain other documents. Moore then ran down the street to Bundy's vehicle, which was already driving away.
 {¶ 3} Later that evening the group was driving in a different part of Youngstown. According to Bundy, Callier and Moore, Moore and Bunch told Bundy that he was taking them to Moore's mother's home. Bundy did not know Moore before this night and did not know where Moore's mother lived. Moore and Bunch had Bundy stop the car and let them out. Moore then ran up to a woman, M.K., who was getting out of her vehicle while Bundy began to drive away. Moore pointed a gun at the woman and demanded she get back in her car. She got in the passenger seat. Moore got in the driver's seat. Moore then backed out of the driveway and drove a short distance when Bunch jumped into the backseat, pointed a gun at M.K.'s head, and demanded that she be quiet and give him her property. Moore began digitally raping M.K. in her car while he was driving.
 {¶ 4} Moore caught up to Bundy and flashed his headlights at Bundy. Bundy slowed, Moore pulled alongside Bundy, and Moore and Bunch asked Bundy to follow them. When Moore caught up to Bundy, M.K. saw Bundy's license plate and remembered the number.
 {¶ 5} The cars drove to an empty lot in Youngstown where Bunch and Moore forced M.K. out of her car. The two then took turns orally, anally and vaginally raping M.K. at gunpoint. At one point, Bundy, who suffers from a physical disability and needs assistance getting out of a vehicle, told Callier to stop Bunch and Moore. Callier convinced Bunch and Moore to stop and allowed M.K. to leave the scene, although M.K. was threatened to keep quiet. In addition, while M.K. was being raped, Moore and Callier stole some property from her car.
 {¶ 6} M.K. immediately drove to her boyfriend's parents' home who took her to the hospital. At the hospital, M.K. gave a police officer Bundy's license plate number, a description of the vehicle, a description of the suspects' clothing, and physical descriptions of the suspects. Soon thereafter, a Youngstown police officer spotted the vehicle and followed it until it stopped. When he caught up to it, the driver's seat was empty, but Moore, Callier and Bundy were all still in the car. The police found both M.K.'s property and Cosa's property in Bundy's vehicle.
 {¶ 7} The three suspects which were arrested that night were taken to the police station after midnight. When Detective Kenneth Linden questioned Bundy, he told Detective Linden, "I think I might want an attorney." Detective Linden stopped questioning at that point and began to question both Moore and Callier.
 {¶ 8} The next afternoon, Detective Jerome Shuster questioned Bundy. Bundy agreed to waive his Miranda rights and told Detective Shuster that he was the driver that night. He testified that although he could hear screams, he could not see what Bunch and Moore were doing to M.K. He told Detective Shuster that when he did, he sent Callier out to stop them. When interviewed by Detective Shuster a second time that day, Bundy invoked his right to an attorney and refused to speak.
 {¶ 9} The Mahoning County Grand Jury separately indicted Bundy on two counts of aggravated robbery, first degree felonies, and one count of conspiracy to commit aggravated robbery, a second degree felony. It also charged Bundy with firearm specifications on each count of the indictment. Over Bundy's repeated objections prior to, during, and after trial, the trial court later joined his case with those of Bunch, Moore and Callier.
 {¶ 10} Bundy moved to suppress both his statement to Detective Shuster and M.K.'s identification of him. The trial court denied both prongs of Bundy's motion to suppress.
 {¶ 11} The case then proceeded to a jury trial. After the evidence was presented, the jury found Bundy not guilty of the first count of aggravated robbery and each firearm specification, but found him guilty of the second count of aggravated robbery and conspiracy to commit aggravated robbery. Bundy filed a motion for a new trial or acquittal because of the alleged inconsistency in the jury's verdict regarding the two counts of aggravated robbery. The trial court denied that motion and the matter proceeded to sentencing. The trial court sentenced Bundy to maximum sentences for both aggravated robbery and conspiracy to commit aggravated robbery and ordered those prison terms be served consecutively for a total of eighteen years imprisonment.
 {¶ 12} Bundy then timely appealed his conviction and sentence. On appeal he raised six assignments of error. After oral argument, we asked the parties to brief issues related to Childs, 88 Ohio St.3d 194, i.e. whether the conspiracy count in the indictment adequately set forth the charge. Our disposition of this issue could render some of Bundy's original assignments of error moot. Thus, we will address this supplemental assignment of error first.
 SUPPLEMENTAL ASSIGNMENT OF ERROR {¶ 13} "The appellant's jury findings and sentence for conspiracy to aggravated burglary under count three of his indictment were improper where the appellee, State of Ohio, failed to allege in the indictment at least one specific, substantial, overt act in furtherance of a conspiracy and therefore appellant's conviction and sentence must be set aside."
 {¶ 14} In this supplemental assignment of error, Bundy contends that his indictment improperly charged him with conspiracy to commit aggravated robbery because it did not allege one specific, substantial, overt act in furtherance of the conspiracy. The state claims that Bundy waived any objection to the indictment by not raising this issue prior to trial.
 {¶ 15} Crim.R. 12(C)(2) provides that "[d]efenses and objections based on defects in the indictment, information, or complaint (other than failure to show jurisdiction in the court or to charge an offense, which objections shall be noticed by the court at any time during the pendency of the proceeding)" must be raised prior to trial. Crim.R. 33(E)(1) also prohibits a trial court from granting a motion for a new trial because of "[a]n inaccuracy or imperfection in the indictment, information, or complaint, provided that the charge is sufficient to fairly and reasonably inform the defendant of all the essential elements of the charge against him." Thus, the Ohio Supreme Court has held that a criminal defendant's failure to object to the indictment before or at trial waives any defect in the indictment. See State v. Lundgren,73 Ohio St.3d 474, 490, 1995-Ohio-227. As the state points out in its brief, the Ohio Supreme Court recently reaffirmed this general rule of law in State v. Noling, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶ 61.
 {¶ 16} Yet, the Ohio Supreme Court did not follow that general rule inChilds, 88 Ohio St.3d 194. In Childs, the Ohio Supreme Court affirmed an appellate court decision vacating the defendant's conviction for conspiracy because of a defective indictment. It did so even though, as pointed out in the dissent, the defendant failed to object to any deficiency in the indictment before trial. Id. at 200.
 {¶ 17} The Ohio Supreme Court did not specify why it refused to treat the objection as waived. Its failure to do so indicates it accepted the appellate court's rationale in the case being appealed to it, State v.Childs (Sept. 11, 1998), 2nd Dist. No. 16325. In that case, the Second District recognized that Crim.R. 12(C)(2) contains two exceptions to the general rule that a failure to object to an indictment waives the objection: 1) when the indictment fails to show jurisdiction in the court, and 2) when the indictment fails to charge an offense. Either of these objections can be raised "at any time during the pendency of the proceeding." The Second District concluded that an indictment which contains the same deficiency as the indictment at issue in its case "fails to charge an offense" and, thus, the defendant could raise the objection any time during the proceedings.
 {¶ 18} Because the general rule both before and after the Ohio Supreme Court's decision in Childs is that a defendant waives an objection to the indictment if it is not raised before trial, the only way to reconcileChilds with this case law is to assume that it adopted the Second District's rationale and agreed that this particular type of deficiency is a "failure to charge an offense." Thus, Bundy could not have waived this objection to the indictment by not making that objection prior to trial. Accordingly, the state's arguments to the contrary are without merit.
 {¶ 19} Likewise, the state's arguments in opposition to the merits of Bundy's assignment of error are not persuasive. Bundy was indicted and convicted for conspiracy in violation of R.C. 2923.01. That statute defines conspiracy as follows:
 {¶ 20} "(A) No person, with purpose to commit or to promote or facilitate the commission of * * * aggravated robbery * * * shall do either of the following:
 {¶ 21} "* * *
 {¶ 22} "(2) Agree with another person or persons that one or more of them will engage in conduct that facilitates the commission of any of the specified offenses.
 {¶ 23} "(B) No person shall be convicted of conspiracy unless asubstantial overt act in furtherance of the conspiracy is alleged andproved to have been done by the accused or a person with whom the accusedconspired, subsequent to the accused's entrance into the conspiracy. For purposes of this section, an overt act is substantial when it is of a character that manifests a purpose on the part of the actor that the object of the conspiracy should be completed." (Emphasis added).
 {¶ 24} The Ohio Supreme Court has held that an indictment is insufficient to charge someone with conspiracy if it does not "allege some specific, substantial, overt act performed in furtherance of the conspiracy." Childs, 88 Ohio St.3d 194. In Childs, the defendant was charged with conspiracy to commit aggravated trafficking. His indictment on that count read:
 {¶ 25} "`[B]etween the dates of December 2, 1993 and February 13, 1995, in the County of Montgomery, aforesaid, and State of Ohio, with purpose to commit, or to promote or facilitate the commission of Aggravated Trafficking, a violation of Section 2925.03(A)(2) of the Revised Code, did agree with another person or persons that one (1) or more of them would engage in conduct that facilitated the commission of any such offense, and that subsequent to each defendant's entrance into said conspiracy, a substantial overt act was done by each defendant or a person with whom they conspired; contrary to the form of the statute (in violation of Section 2923.01(A)(2) of the Ohio Revised Code).'" Id. at 197.
 {¶ 26} The Supreme Court, in affirming the appellate court's decision, stated the following in finding that the Childs indictment was inadequate:
 {¶ 27} "[T]he phrase `a substantial overt act was done' merely recites the generic words of the statute. The words of the indictment are little more than a recitation of the words of R.C. 2923.01(B), which defines the crime of conspiracy.
 {¶ 28} "* * *
 {¶ 29} "Generally, the requirements of an indictment may be met by reciting the language of the criminal statute. See State v. Murphy
(1992), 65 Ohio St.3d 554, 583. * * * However, in this case, the plain words of the statute defining the crime of conspiracy can produce only one conclusion: an indictment for conspiracy requires more than a mere recitation of the exact wording of the statute defining the offense of conspiracy.
 {¶ 30} "* * *
 {¶ 31} "[W]hile the state may satisfy its burden by reciting the exact words of a criminal statute in an indictment for some offenses, an indictment for conspiracy to commit aggravated trafficking pursuant to R.C. 2923.01 must allege some specific, substantial, overt act performed in furtherance of the conspiracy. The state's failure to allege a specific, substantial, overt act committed in furtherance of the conspiracy in count fourteen of the indictment against Childs renders the indictment invalid." Id. at 1981-99.
 {¶ 32} Pursuant to Childs, the Ninth District has vacated a conviction based on the following indictment:
 {¶ 33} "`And the Grand Jurors of the State of Ohio, within and for the body of the County of Summit aforesaid, on their oaths in the name and by the authority of the State of Ohio, DO FURTHER FIND AND PRESENT that RICHARD DWIGHT CALLAHAN, on or about the 6th day of August, 2000, in the County of Summit and State of Ohio, did commit the crime of CONSPIRACY TO COMMIT ILLEGAL MANUFACTURE OF DRUGS in that he did aid or abet another to knowingly manufacture or otherwise engage in any part of the production of Methamphetamine, a Schedule II controlled substance, in violation of Section 2925.04(A)/2923.01 of the Ohio Revised Code, A FELONY OF THE THIRD DEGREE, contrary to the form of the statute in such case made and provided against the peace and dignity of the State of Ohio.'" State v.Callahan, 9th Dist. No. 20432, 2001-Ohio-1512.
 {¶ 34} The Eleventh District acted likewise based on this indictment:
 {¶ 35} "`THE JURORS OF THE GRAND JURY of the State of Ohio, within and for the body of the County aforesaid, on their oaths, in the name and by the authority of the State of Ohio, do find and present that on or about November 1996 through and including April of 1998, at Trumbull County, Ohio, PHIL F. GEORGE, JR., with purpose to commit, promote, and/or facilitate the commission of engaging in a pattern of corrupt activity, with Samuel Lefter, James J. Futey, David Griffing, William Kush, and/or George Teringo and/or other unindicted or unknown co-conspirators, plan or aid in planning the commission of such offense, or agree with Samuel Lefter, James J. Futey, David Griffing, William Kush and/or George Teringo, and/or other unindicted or unknown co-conspirators, that one or more of them would engage in conduct which facilitates the commission of engaging in a pattern of corrupt activity, a substantial overt act in furtherance of the said conspiracy having been done by PHIL F. GEORGE, JR., or a person with whom he conspired, subsequent to the said PHIL F. GEORGE, JR.'s, entrance into the conspiracy.'" State v. George (Dec. 22, 2000), 11th Dist. No. 99-T0-163.
 {¶ 36} In this case, the third count of Bundy's indictment charged him with conspiracy to commit aggravated robbery. It provides:
 {¶ 37} "The Jurors of the Grand Jury of the State of Ohio, within and for the body of the County of Mahoning, on their oaths, and in the name and by the authority of the State of Ohio, do find and present that on or about August 21, 2001, at Mahoning County, do find that ANDRE BUNDY did with purpose to commit, promote or facilitate the commission of Aggravated Robbery agree with Jamar Callier, Brandon Moore and Chaz Bunch that one or more of them would engage in conduct which facilitates the commission of such offense, a substantial overt act in furtherance of said conspiracy having been done by ANDRE BUNDY or a person with whom he conspired, subsequent to the said ANDRE BUNDY's entrance into the conspiracy; in violation of Section 2923.01 of the Ohio Revised Code, Felony of the Second degree, and against the peace and dignity of the State of Ohio."
 {¶ 38} The indictment in this case is, for all practical purposes, the same as those in Childs, Callahan, and George; it merely tracks the language of R.C. 2923.01. It alleges that Bundy committed "a substantial overt act in furtherance of the said conspiracy," but fails to allege aspecific, substantial, overt act. Thus, the indictment is insufficient to charge Bundy with conspiracy to commit aggravated robbery.
 {¶ 39} We recognize that Bundy did not raise the issue in the trial court, did not raise it in his initial brief to this court, and has not claimed he was prejudiced by the insufficiency in the indictment. But as the dissent pointed out in Childs, the Ohio Supreme Court reversed the conviction in that case even though the defendant neither raised the issue in the trial court nor claimed any prejudice from the deficiency in the indictment. Accordingly, Bundy's conviction and sentence for conspiracy to commit aggravated robbery is vacated and the third count of the indictment is hereby dismissed.
 {¶ 40} As an aside, we do note that if the state so chooses, it may refile the conspiracy charge against Bundy. See Crim.R. 12(J) (stating that "[i]f the court grants a motion to dismiss based on a defect in the institution of the prosecution or in the indictment, information or complaint, it may also order that the defendant be held in custody or that the defendant's bail be continued for a specified time not exceeding fourteen days, pending the filing of a new indictment, information or complaint"). See also, State v. Broughton (1991), 62 Ohio St.3d 253, 266;State v. Duncan, 154 Ohio App.3d 254, 2003-Ohio-4695; Childs, 2d Dist. No. 16325. However, if the state chooses to take this course of action, the new indictment must be consistent with the requirements explained inChilds and in this opinion.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 41} "Appellant was denied a fair trial when the trial court abused its discretion and overruled his motion to suppress his statement contrary to the protections of the fifth and sixth amendment."
 {¶ 42} In particular, Bundy contends the trial court erred when it denied his motion to suppress certain pre-trial statements he gave to the police. He claims that he gave his statement only after one officer failed to inform another officer that Bundy had invoked his right to counsel. Bundy argues that the officers could not continue questioning him after he first invoked his right to counsel.
 {¶ 43} In his motion to suppress, Bundy argued that the trial court should suppress both the second victim's identification of him as one of the offenders as well as his statement to the police. Bundy does not challenge the trial court's decision not to suppress the victim's identification of Bundy on appeal. Thus, our review of the suppression motion solely addresses the issues of whether the trial court erred when it did not suppress the statement Bundy made to the police.
 {¶ 44} Appellate review of a motion to suppress presents mixed issues of law and fact. State v. Jedd, 146 Ohio App.3d 167, 171,2001-Ohio-2479. When considering a motion to suppress, a trial court assumes the role of the trier of fact and is in the best position to resolve factual questions and evaluate witness credibility. State v.Smith, 80 Ohio St.3d 89, 105, 1997-Ohio-355. Thus, "a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." Ornelas v.United States (1996), 517 U.S. 690, 699. When conducting this review, appellate courts must accept a trial court's findings of fact if they are supported by competent, credible evidence. State v. Winand (1996),116 Ohio App.3d 286, 288. Accepting those facts as true, the reviewing court must then independently determine whether the trial court's decision met the applicable legal standard. State v. Santini,144 Ohio App.3d 396, 406, 2001-Ohio-3313.
 {¶ 45} In Miranda v. Arizona (1966) 384 U.S. 436, 467-471, the United States Supreme Court held that an individual subjected to custodial interrogation must be informed of his right to remain silent and of his right to have counsel present during questioning. Questioning must cease if an individual invokes these rights at any time prior to or during questioning. Id. at 473-474. When an individual indicates his desire to have counsel present, authorities may continue interrogation only if, "the accused himself initiates further communication, exchanges, or conversations with police." Edwards v. Arizona (1981) 451 U.S. 477,484-485. This "`rigid' prophylactic rule" requires the court to, "determine whether the accused actually invoked his right to counsel."Smith v. Illinois (1984), 469 U.S. 91, 95.
 {¶ 46} This prophylactic rule only takes effect, however, when an accused has clearly invoked his constitutional right to counsel. Davisv. United States (1994), 512 U.S. 452, 459. An accused "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." Id. "No cessation of questioning is required if the request is ambiguous." State v. Brown, 100 Ohio St.3d 51,2003-Ohio-5059, ¶ 18. Statements like "Maybe I should talk to a lawyer," "I think I need a lawyer," and "Do I need an attorney?" are ambiguous and do not invoke a defendant's right to counsel. Davis, 512 U.S. 452; Statev. Henness, 79 Ohio St.3d 53, 1997-Ohio-405; State v. Taylor (2001),144 Ohio App.3d 255.
 {¶ 47} In this case, when first questioned by Detective Linden, Bundy said, "I think I might want an attorney." Bundy does not claim that this statement is an unambiguous invocation of his right to counsel and this claim would surely fail since "I think I might want an attorney" is not functionally different from the ambiguous statements in Davis andHenness. Instead, he contends that this court must treat his otherwise ambiguous invocation of his right to counsel as unambiguous since Detective Linden reasonably understood Bundy's statement as an invocation of his right to counsel, i.e. Detective Linden stopped questioning him when he made this statement. The case Bundy primarily relies upon isState v. Davis (Nov. 19, 1999), 7th Dist. No. 96CO44.
 {¶ 48} Bundy's reliance on this case is misplaced. In Davis, police were questioning the defendant when he said, "I think I ought to get an attorney." This court concluded that this statement "could be viewed by a reasonable police officer under the circumstances as ambiguous and, thus, not to be seen as a clear invocation of his right to counsel.However, we are not pressed to make such a determination." Id. (Emphasis added). The reason we were not pressed to make that determination was because the trial court did not deny the defendant's motion to suppress because his invocation of his right to counsel was ambiguous. Rather, it denied his motion because the subsequent police questioning fell withinMiranda's "public safety" exception. Thus, the trial court would have denied the defendant's motion to suppress even if he had unambiguously invoked his right to counsel.
 {¶ 49} On appeal, this court affirmed the trial court's conclusion that the subsequent questioning fell within the "public safety" exception. At no time did this court hold that an otherwise ambiguous invocation of his right to counsel must be treated as unambiguous if the police officer reasonably understood a statement as an invocation of his right to counsel. Thus, Davis does not support Bundy's argument.
 {¶ 50} Accordingly, our determination is dependent on whether Bundy's request for counsel was ambiguous or unambiguous. As aforementioned, "police must honor an invocation of the right to cut off questioning only if it is unambiguous." (Emphasis sic.) State v. Murphy, 91 Ohio St.3d 516,520, 2001-Ohio-112. "If the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him." Davis v. United States, 512 U.S. 462.
 {¶ 51} In this case, Bundy's statement was, at best, an ambiguous invocation of his right to counsel. Detective Linden never testified that he understood Bundy's statement as an invocation of his right to counsel. He testified that he stopped questioning Bundy at that time "because I knew I had two other guys that I had to question." Thus, the record supports the trial court's conclusion "that Defendant's statement to Det. Linden that he thinks he might want an attorney was not an unequivocal invocation of his right to counsel." The police were not required to stop questioning Bundy after his statement to Detective Linden. Therefore, this assignment lacks merit.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 52} "The trial court erred in overruling appellant's motion for a separate trial."
 {¶ 53} Bundy contends the trial court erred when it initially joined his trial with those of his co-defendants, Bunch and Moore, and when it denied his motion to sever. Crim.R. 14 provides for relief from joinder "[i]f it appears that a defendant * * * is prejudiced by a joinder of offenses or of defendants." "[J]oinder of defendants is proper so long as all defendants participated in the same series of transactions leading to the charges even though not all defendants participated in every act. * * * Not all defendants need be charged in each count * * * nor would differing levels of culpability among defendants necessarily justify severance." State v. Schiebel (1990), 55 Ohio St.3d 71, 88-89 (footnotes and citations omitted).
 {¶ 54} "Joinder of defendants and the avoidance of multiple trials is favored in the law for many reasons. Joinder conserves judicial and prosecutorial time, lessens the not inconsiderable expenses of multiple trials, diminishes inconvenience to witnesses, and minimizes the possibility of incongruous results in successive trials before different juries." State v. Thomas (1980), 61 Ohio St.2d 223, 225. "The test is `whether a joint trial is so manifestly prejudicial that the trial judge is required to exercise his or her discretion in only one way — by severing the trial. * * * A defendant must show clear, manifest and undue prejudice and violation of a substantive right resulting from failure to sever. * * *.'" Schiebel at 89, quoting United States v. Castro (C.A.9, 1989), 887 F.2d 988, 996. Misjoinder is not per se reversible error. Id.
 {¶ 55} This court reviews a trial court's decision regarding joinder for an abuse of discretion. Id. The phrase "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. State v. Adams
(1980), 62 Ohio St.2d 151, 157. "A reviewing court may not substitute its judgment for that of the trial court absent an abuse of discretion."Tracy v. Merrell Dow Pharmaceuticals, Inc. (1991), 58 Ohio St.3d 147, 152. A trial court does not abuse its discretion in refusing to grant severance where the prejudicial aspects of joinder are too general and speculative. State v. Lundy (1987), 41 Ohio App.3d 163, 169; State v.Carter (Mar. 10, 2000), 6th Dist. No. L-97-1334.
 {¶ 56} In this case, Bundy, Bunch and Moore were all separately indicted. The state never filed a motion to join Bundy's case with those of Bunch and Moore. Nevertheless, the trial court joined these defendants' cases after a pretrial conference. Subsequently, Bundy moved for a separate trial. The trial court heard the motion and found that joinder of these cases was appropriate. Bundy renewed his motion to sever himself from his co-defendants several times during trial.
 {¶ 57} We cannot conclude that the trial court abused its discretion when it initially ordered joinder. Bundy's indictment contained three counts, two for aggravated robbery and one for conspiracy to commit aggravated robbery. Bunch and Moore were indicted for those and other crimes, including kidnapping and rape. But, as Schiebel states, not all defendants need to be charged with each count to join defendants for trial. Id. at 89. Since each of the counts in the defendants' indictments arose from the same series of transactions, the trial court did not abuse its discretion when it ordered joinder.
 {¶ 58} Nevertheless, Bundy argues that he was manifestly prejudiced by the joinder for two reasons: 1) he would be prejudiced by the introduction of his co-defendants' statements at trial without the opportunity to cross-examine and 2) the spillover from the amount of evidence and seriousness of the charges against Bunch and Moore.
 {¶ 59} Bundy first argues that he was manifestly prejudiced by the joinder since the introduction of Moore's extrajudicial statement against him violated his right to confront the witnesses against him. "Unsworn, out-of-court statements by an accomplice are generally inadmissible because they violate the Confrontation Clause of the Sixth Amendment to the United States Constitution." State v. Carroll, 1st Dist. No. C-020777, 2003-Ohio-5260, ¶ 8. All criminal defendants have the right to confront the witnesses against them. Maryland v. Craig (1990),497 U.S. 836, 843. And a defendant is deprived of the Sixth Amendment right of confrontation when a facially incriminating extrajudicial statement of a non-testifying co-defendant is introduced at their joint trial, despite a trial court's instruction to the jury to consider the statement only against the co-defendant. Bruton v. United States (1968),391 U.S. 123, 137.
 {¶ 60} In this case, Detective Shuster read verbatim from Moore's extrajudicial statement during his testimony. In that statement, Moore admitted that he committed the offenses against Cosa, Hammond and M.K. According to Moore's statement, "Shorty Mack" (later identified as Bunch) forced him to commit these acts. Moore never took the stand. Accordingly, Bundy never had the opportunity to cross-examine Moore regarding the substance of his extrajudicial statement. Thus, this superficially raises Bruton issues.
 {¶ 61} Nevertheless, it does not appear that Bundy was manifestly prejudiced by the introduction of Moore's statement because Detective Shuster also read Bundy's extrajudicial statement into evidence. In that statement, Bundy admitted that he was the driver of the car that night during both series of crimes. Thus, Bundy's own statement incriminated him to the same extent that Moore's statement did. Furthermore, there was other ample evidence that Bundy drove the vehicle that night. He was the owner of the vehicle, Callier testified that Bundy drove the vehicle and M.K. testified she saw Bundy in the driver's seat. The Ohio Supreme Court stated, "A violation of an accused's right to confrontation and cross-examination is not prejudicial where there is sufficient independent evidence of an accused's guilt to render improperly admitted statements harmless beyond a reasonable doubt." State v. Mortiz (1980),63 Ohio St.2d 150, paragraph two of the syllabus. Accordingly, Bundy suffered no prejudice when Moore's extrajudicial statement was introduced into evidence.
 {¶ 62} Next Bundy argues that the substantial difference between the amount of evidence against he and his co-defendants and the difference in the types of crimes they were being tried for materially prejudiced him. Though this argument is somewhat persuasive, we cannot conclude that the trial court abused its discretion when it concluded that the evidence of kidnapping and rape introduced against his co-defendants did not materially prejudice Bundy. It is difficult to imagine how the prosecution could have presented its evidence against Bundy without some reference to those other crimes since the events that led to those charges and the charges against Bundy were interrelated. Of course, the prosecution may not have needed to describe the details of his co-defendants' rape of M.K. in a prosecution of Bundy alone. But this alone does not overcome the presumption in favor of joint trials.
 {¶ 63} In this case, the evidence was presented in a straightforward, easily understood fashion. Each of the incidents took place at a different time and there is very little question regarding how each defendant acted that night. There is no indication that the jury was unable to segregate the proof as to each charge or as it pertained to each defendant, especially given the fact that it acquitted Bundy of one count and all firearm specifications. See State v. Roberts (1980),62 Ohio St.2d 170; State v. Williams, 10th Dist. Nos. 02AP-730, 02AP-731; 2003-Ohio-5204, ¶ 31; State v. Vargas, 5th Dist. No. 2001CA00044, 2002-Ohio-2478; State v. Curry, 8th Dist. No. 80148, 2002-Ohio-2260; State v. Smith (Sept. 30, 1993), 11th Dist. No. 91-T-4610.
 {¶ 64} Furthermore, the trial court instructed the jurors that they should consider the evidence against each of the defendants separately. And when discussing the law concerning each offense, it specified the defendants charged with those defenses. Thus, the trial court clarified that Bundy was only charged with aggravated robbery and conspiracy to commit aggravated robbery. The jury is presumed to have followed the trial court's limiting instructions. State v. Raglin, 83 Ohio St.3d 253,264, 1998-Ohio-110.
 {¶ 65} Finally, Bundy has not attempted to argue that he would have defended his case differently if the other defendants had not been joined. See State v. Johnson, 88 Ohio St.3d 95, 110, 2000-Ohio-276; Statev. Franklin (1991), 62 Ohio St.3d 118, 123; State v. Stephens (Dec. 23, 1999), 4th Dist. No. 98CA41.
 {¶ 66} Thus, for all the above stated reasons, he has failed to show that he was materially prejudiced by the joinder. Consequently, given the strong reasons in favor of joinder, the trial court did not abuse its discretion when it denied Bundy's motion to sever his trial from those of Bunch and Moore. Bundy's second assignment of error is meritless.
 ASSIGNMENT OF ERROR NUMBER THREE {¶ 67} "The trial court erred to the prejudice of the appellant when it overruled his motion for new trial, or in the alternative, to enter an acquittal on count two of the indictment following the inconsistent verdict of the jury."
 {¶ 68} Here, Bundy contends that the jury's verdicts in counts one and two of the indictment are inconsistent. In each of those counts, Bundy was charged with aggravated robbery. The language describing the offenses in those counts are identical and do not name the alleged victim of either count. Bundy claims that those two counts related to the offenses against Cosa and Hammond. The jury found Bundy not guilty of the first count, but guilty of the second. He claims this is inconsistent and contends that this court should either remand the matter for a new trial or enter a judgment of acquittal on the second count.
 {¶ 69} In response, the state argues that the jury's verdict is consistent. First, it disputes Bundy's assumption of the first two counts of the indictment related to Cosa and Hammond. Second, it cites Ohio Supreme Court case law for the proposition that inconsistent verdicts cannot arise from inconsistent responses to different counts; they only arise from inconsistent verdicts as to the same count. The state's arguments are correct.
 {¶ 70} Bundy moved for a new trial based on the alleged inconsistency. This court will not reverse a trial court's decision to deny a motion for new trial absent an abuse of discretion. Schiebel,55 Ohio St.3d 71. As stated above, the phrase "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Adams,62 Ohio St.2d at 157.
 {¶ 71} First, as the state argues, Bundy's assumption that counts one and two related to the offenses against Cosa and Hammond is just that, an assumption. The indictment does not specify the victim of those offenses. Bundy never requested a bill of particulars to clarify the allegations. Thus, his assumption is pure speculation. Bundy's failure to request a bill of particulars prevents him from being able to claim that any of the counts related to a specific victim. This seriously undermines his inconsistency argument.
 {¶ 72} But the more fundamental problem with his argument is that the Ohio Supreme Court has long held that a verdict will not be set aside as inconsistent, or uncertain, because it finds differently as to counts in which there is no material difference. Browning v. State (1929),120 Ohio St. 62, 71. This principle was recently reiterated in State v.Lovejoy, 79 Ohio St.3d 440, 1997-Ohio-371. "The several counts of an indictment containing more than one count are not interdependent and an inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count." Id. at paragraph one of the syllabus; State v. Brown
(1984), 12 Ohio St.3d 147, paragraph one of the syllabus; State v. Adams
(1978), 53 Ohio St.2d 223, paragraph two of the syllabus, vacated on other grounds (1978), 439 U.S. 811; State v. Hicks (1989),43 Ohio St.3d 72, 78 ("Inconsistent verdicts on different counts of a multi-count indictment do not justify overturning a verdict of guilt.").
 {¶ 73} "Each count in an indictment charges a distinct offense and is independent of all other counts." State v. Washington (1998),126 Ohio App.3d 264, 276. "[T[he sanctity of the jury verdict should be preserved and could not be upset by speculation or inquiry into such matters to resolve the inconsistency." Lovejoy, 79 Ohio St.3d at 444. "[O]nce the jury has heard the evidence and the case has been submitted, the litigants must accept the jurors' collective judgment." State v.Gonzalez, 154 Ohio App.3d 9, 2003-Ohio-4421, ¶ 106. The possibility of an inconsistency between counts should not be attributed to jury confusion; it is just as likely that the jury entered a judgment of acquittal on one count out of basic leniency. State v. Perdue,153 Ohio App.3d 213, 2003-Ohio-3481, ¶ 40.
 {¶ 74} Bundy does not even attempt to argue that there is an inconsistency within the jury's verdict as to each count. Instead, he contends the above case law should not apply in this case since the inconsistent verdicts arose from counts containing identical language. This same argument has been rejected by the courts cited above. Bundy's argument that the jury's inconsistent verdict entitles him to either a new trial or an acquittal on count two of the indictment is meritless.
 ASSIGNMENTS OF ERROR NUMBERS FOUR AND FIVE {¶ 75} "The trial court denied appellant due process under thefourteenth amendment due to the fact his conviction in count three (3) for conspiracy to aggravated robbery was against the manifest weight of the evidence and the jury's verdict was inconsistent with the evidence and testimony presented at trial."
 {¶ 76} "The trial court erred to the prejudice of the appellant by failing to give proper jury instructions to the jury regarding conspiracy under court three (3) of appellant's indictment as said instructions were not correct statements of law."
 {¶ 77} These assignments of error are rendered moot by our conclusion that the indictment was insufficient to charge Bundy with conspiracy to commit aggravated robbery.
 ASSIGNMENT OF ERROR NUMBER SIX {¶ 78} "The trial court erred by imposing the maximum sentence upon appellant and by imposing consecutive maximum terms of incarceration."
 {¶ 79} Due to our disposition of the supplemental assignment of error, Bundy's argument that the trial court erred by ordering consecutive terms of imprisonment is moot. Accordingly, we will only address whether the trial court properly imposed the maximum sentence for aggravated robbery upon Bundy.
 {¶ 80} A trial court is only allowed to impose a maximum sentence for an offense upon "offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section." R.C. 2929.14(C). We may only vacate, increase, reduce, or otherwise modify Bundy's sentence if it clearly and convincingly finds that the record does not support the sentencing court's findings or that the sentence is otherwise contrary to law. R.C.2953.08(G)(2).
 {¶ 81} Bundy is neither a major drug offender nor a repeat violent offender and the trial court specifically refused to find that he posed the greatest likelihood of committing future crimes. The trial court sentenced Bundy to the maximum sentence because it found that he committed the worst form of the offense.
 {¶ 82} Bundy does not argue that the trial court did not make the findings required by R.C. 2929.14 when sentencing him to the maximum prison term for aggravated robbery since it found that he committed the worst form of the offense. Instead, he contends the evidence does not support that finding.
 {¶ 83} In addressing Bundy, Bunch and Moore, the trial court referenced the victim's testimony stating that it felt her fear and the terror that was reigned down on her. (Tr. 48). It also stated that "These crimes are so random, so circumstantial that they represent the fears that all of us have come to feel, that anyone at any time can be in the wrong place at the wrong time and become the victim of a gang of people who is hell bent on nothing but committing the most unspeakable of crimes." (Tr. 46-47). The trial court then specifically addressed Bundy. In addressing Bundy, the court discussed his actions during the commission of the crimes. The court talked about how Bundy followed Bunch and Moore to the scene of the rapes and sat in his car listening to music while the rapes occurred. Specifically the court stated:
 {¶ 84} "To follow these guys after they abducted this woman is what you want me to believe, and to sit there in a car while she went through this unbelievable reign of terror listening to the music and just hanging out while your buddies were doing what they were doing is just as unforgivable as what they did. The prosecuting attorney has already given you all of the consideration you're entitled to, and the jury gave you even further consideration by finding you not guilty of one of the charges of aggravated robbery."
 {¶ 85} The trial court did not err when it considered Bundy's action of following Moore and Bunch to the scene of the rapes and sitting in the car while the rapes where occurring. "A court may consider a defendant's uncharged yet undisputed conduct when determining an appropriate sentence." State v. Scheer, 158 Ohio App.3d 432, 2004-Ohio-4792, ¶13, citing State v. Steward, 4th Dist. No. 02CA43, 2003-Ohio-4082; Statev. Shahan, 4th Dist. No. 02CA63, 2003-Ohio-6945 (stating that as in sentencing hearings, the Rules of Evidence do not apply to sexual-predator determination hearings, so the trial court may consider reliable hearsay contained in a PSI).
 {¶ 86} Likewise, unindicted acts or not guilty verdicts can be considered in sentencing without resulting in error when they are not the sole basis for the sentence. State v. Williams, 8th Dist. No. 79273, 2002-Ohio-503. The PSI shows that Bundy was charged with two counts of complicity to aggravated robbery and one count of complicity to kidnapping. The grand jury did not indict on these charges. However, under the above rationale, these charges may be considered in sentencing, as can the conspiracy to commit aggravated robbery (even though the indictment was inadequate, it was unindicted conduct) and the other aggravated robbery charge.
 {¶ 87} Thus, all the above facts could be considered by the trial court and do support the finding. Yet, these factors were not the only justification for the imposition of the maximum sentence, i.e. worst form of the offense finding. As stated above, the trial court also found that the randomness of the crime, the circumstantial nature of the crime, and that a person could be in the wrong place at the wrong time and become a victim of a gang of people committing a crime also supported the worst form of the offense finding. This factual finding supports the worst form of the offense finding. Consequently, all of the above taken in conjunction with each other, provide sufficient justification for the worst form of the offense finding.
 {¶ 88} We do acknowledge that when considering Bunch and Moore's actions to that of Bundy, the actions taken by Bunch and Moore were different from those taken by Bundy. However, Bunch and Moore's actions do not negate the severity of Bundy's own actions. As appellate courts have recognized, there is not just one "worst form" of any criminal offense "because the plural `forms' [in R.C. 2929.14(C)] contemplates `not just a single form of any offense that is the worst, but that more than one situation may be one of the worst forms of the offense.'" Statev. Mushrush (1999), 135 Ohio App.3d 99, 110, quoting State v.Patterson (Sept. 21, 1998), 4th Dist. No. 97CA28; State v. Boshko
(2000), 139 Ohio App.3d 827, 836 ("[T]he trial court is not required to compare the defendant's conduct to some hypothetical, absolute worst form of the offense.").
 {¶ 89} Considering all of the above, we cannot find that the record does not clearly and convincingly support the sentence. As such, this assignment of error lacks merit.
 CONCLUSION {¶ 90} For the foregoing reasons, Bundy's conviction and sentence for conspiracy to commit aggravated robbery is vacated and the third count of the indictment is dismissed. The remaining conviction and sentences are affirmed.
Waite, J., concurs.
DeGenaro, J., dissents; see dissenting opinion.