OPINION
{¶ 1} Defendant-appellant, Frank Deltoro, appeals from a Mahoning County Common Pleas Court judgment convicting him of felony possession of marijuana following a jury trial.
 {¶ 2} On May 17, 2005, the Alcohol, Tobacco, and Firearms Task Force executed a search warrant at Daniel Morales's home in Youngstown. The task force broke down the door. In the house, they found Morales, his wife, and their three children. They also found appellant and Armando Rodriguez-Baron.
 {¶ 3} Under the stairs in the basement, officers located a duffel bag with a 35-pound brick of marijuana. The bag had the name "Deltoro" on it. They also found a black trash bag containing 24 baggies each containing approximately one pound of marijuana. Officers also found a scale and more baggies nearby. Throughout the rest of the house, officers located more marijuana in smaller quantities hidden in various places.
 {¶ 4} According to Morales, appellant, Rodriguez-Baron, and two other men arrived at his house on May 13, 2005. In the trunk of their car, the men had clothes and two bricks of marijuana. The men unloaded the marijuana and took it to the basement of Morales's house. Appellant and Rodriguez-Baron spent the night at Morales's house. The next day all of the men, including appellant, went into Morales's basement and weighed and bagged up one of the bricks of marijuana. They did not get around to separating the other brick of marijuana.
 {¶ 5} On May 26, 2005, a Mahoning County grand jury indicted appellant, Rodriguez-Baron, and Morales on one count of possession of marijuana, a second-degree felony in violation of R.C. 2925.11(A)(C)(3)(f), and one count of trafficking in marijuana, a first-degree felony in violation of R.C. 2925.03(A)(2)(C)(3)(f).
 {¶ 6} On August 25, 2005, appellant filed a motion to have his trial severed from Rodriguez-Baron's trial. The court overruled this motion.
 {¶ 7} Appellant and Rodriguez-Baron filed a motion requesting that the trial court compel the state to provide them with the identity of its confidential informant (CI). This led to the first appeal in this case on the state's appeal of the trial court's *Page 2 
order that it was required to disclose the CI's identity to appellant and Rodriguez-Baron. See State v. Deltoro, 165 Ohio App.3d 750,848 N.E.2d 558, 2006-Ohio-1280. The parties eventually entered into an agreement. In exchange for not having to reveal the CI's identity, the state agreed to drop the trafficking charge and prosecute appellant and Rodriguez-Baron only on the possession charge. In a June 29, 2006 judgment entry, the court sustained the state's motion to dismiss the trafficking in marijuana charge.
 {¶ 8} The matter proceeded to a joint jury trial solely on the possession of marijuana count. Morales pleaded guilty to conspiring to traffic marijuana and testified against appellant and Rodriguez-Baron. The jury found both appellant and Rodriguez-Baron guilty. The trial court subsequently sentenced appellant to eight years in prison.
 {¶ 9} Appellant filed a timely notice of appeal on May 24, 2007.
 {¶ 10} Appellant raises three assignments of error, the first of which states:
 {¶ 11} "THE TRIAL COURT VIOLATED APPELLANT'S SIXTH AMENDMENT RIGHT TO A SPEEDY TRIAL WHEN IT OVERRULED APPELLANT'S MOTION FOR DISMISSAL BASED UPON HIS RIGHT TO A SPEEDY TRIAL."
 {¶ 12} Appellant argues that he was denied his right to a speedy trial. He contends that the motion to continue made by one of his co-defendants should not count against him. Other than that, his argument is non-specific.
 {¶ 13} Every person who is charged with an offense for which he may be deprived of his liberty or property is entitled to the fundamental right of a speedy trial. State v. Dunlap, 7th Dist. No. 01-CA-124, 2002-Ohio-3178, at ¶ 10. This is so because the right to speedy trial "`is premised upon the reality that fundamental unfairness is likely in overlong prosecutions.'" State v. Anderson, 7th Dist. No. 02-CO-30, 2003-Ohio-2557, at ¶ 13, quoting Dickey v. Florida (1970), 398 U.S. 30,54, 90 S.Ct. 1564, 26 L.Ed.2d 26.
 {¶ 14} Pursuant to R.C. 2945.71(C)(2), the state must bring a person charged with a felony to trial within 270 days after his arrest. If the accused is held in jail in *Page 3 
lieu of bail on the pending charge, then each day he is held in jail counts as three days. R.C. 2945.71(E). This is known as the "triple-count" provision.
 {¶ 15} The time for speedy trial begins to run when an accused is arrested; however, the actual day of the arrest is not counted.State v. Szorady, 9th Dist. No. 02-CA-008159, 2003-Ohio-2716, at ¶ 12. Appellant was arrested on May 17, 2005. Thus, his speedy trial time began to run on May 18, 2005.
 {¶ 16} The parties dispute whether appellant was held in jail while he was awaiting trial. Appellant contends that he was held in jail the entire time he was awaiting trial. Therefore, he claims that the 90-day speedy trial time applied to him. However, plaintiff-appellee, the State of Ohio, asserts that appellant was out on bond. Thus, it contends that it had 270 days in which to bring appellant to trial.
 {¶ 17} The record reflects that at his initial appearance on June 8, 2005, appellant's bond was continued. Thus, appellant was not initially held in jail. Furthermore, it appears that appellant was out on bond until October 12, 2006, when the trial court indicated that appellant's "community control" was revoked. Therefore, appellant was only entitled to R.C. 2945.71(E)'s triple-count provision during the time he was actually held in jail.
 {¶ 18} The trial court initially set appellant's trial for August 3, 2005.
 {¶ 19} On June 10, 2005, appellant filed a motion for discovery. Pursuant to R.C. 2945.72(E), requests for discovery toll the running of the speedy trial clock. State v. Brown, 98 Ohio St.3d 121,781 N.E.2d 159, 2002-Ohio-7040, at ¶ 26. At this time, 24 days had run on appellant's speedy trial clock.
 {¶ 20} On July 19, appellant filed a motion to compel the state to provide him with the identity of the CI. Thus, the speedy trial clock continued to toll. Also on that day, appellant filed a motion for enlargement of time to file pretrial motions until August 15. This took appellant beyond the August 3 trial date. The court granted appellant's motion and set the trial for September 14. *Page 4 
 {¶ 21} On August 17, appellant filed numerous further discovery motions. On August 25, he filed a motion for a separate trial. All this time, his speedy trial clock was tolled.
 {¶ 22} On September 15, the trial court granted appellant's motion to extend the time for filing pretrial motions until ten days after the state responded to appellant's discovery requests. Thus, once again the trial was pushed back at appellant's request. Still only 24 days had elapsed on appellant's speedy trial clock.
 {¶ 23} The court called the case for trial on Sept 19, 2005. Appellant apparently made an oral motion to dismiss on speedy trial grounds because the trial court stated in its judgment entry that his motion to dismiss for this reason was overruled. It noted that time was tolled due to motions appellant had filed. The court also noted that appellant's co-defendant now requested a continuance, and therefore, it was re-setting the trial for October 11. This continued to toll appellant's speedy trial clock. A motion by a co-defendant may operate to extend the speedy trial time for another co-defendant. State v. Smith, 2d Dist. No. 2003 CA 93, 2004-Ohio-6062, at ¶ 20.
 {¶ 24} It is not entirely clear from the record what became of the October 11 trial date. However, on October 17, appellant filed a motion to suppress. Appellant's motion to suppress once again stopped his speedy trial clock. If we count the time from October 11 to October 17, that brings appellant's speedy trial clock up to 30 days.
 {¶ 25} On November 15, the trial court entered a judgment stating that appellant was given ten days to supplement his brief as related to the search warrant. It further stated that the previously scheduled November 14 trial was continued. During this time, appellant's motion to suppress was still pending and still tolling his speedy trial clock.
 {¶ 26} The trial court held a hearing on the motion to suppress and entered judgment on December 8. Thus, appellant's speedy trial clock once again began to run. No trial date was set at this time. *Page 5 
 {¶ 27} On February 7, 2006, appellant filed a motion to compel discovery and a renewed motion for disclosure of the CI. This once again stopped his speedy trial clock. By this time, 92 days had elapsed.
 {¶ 28} On February 8, the court ordered the state to disclose the CI's identity. The next day, February 9, the state filed a notice of appeal with this court challenging the trial court's order of disclosure. This once again stopped the speedy trial clock. The speedy trial clock is tolled for any period during which a state's appeal pursuant to R.C. 2945.67 is pending. R.C. 2945.72(I).
 {¶ 29} On March 17, 2006, this court entered judgment in the state's appeal, thus starting the speedy trial clock running again.
 {¶ 30} On May 10, appellant filed a renewed motion for disclosure of the CI, which once again stopped his speedy trial clock. At this time, 147 days had elapsed.
 {¶ 31} The trial court held a hearing on the motion on June 15, 2006. It was at this hearing that the state reached a deal with appellant and Rodriguez-Baron whereby the state dropped the trafficking charge in exchange for not having to reveal the CI's identity. Thus, appellant's speedy trial clock began to run again on this date.
 {¶ 32} On August 1, 2006, appellant filed a motion in limine, once again stopping the speedy trial clock. By this time 193 days had elapsed. Then on August 10, appellant and the state made a joint motion to continue the trial.
 {¶ 33} On August 22, appellant entered a guilty plea to a reduced charge. What happened next is not entirely clear from the record. Appellant's bond was continued. His sentencing hearing was set. The court called appellant's case for sentencing on October 12. The judgment entry for that date indicates that appellant had not cooperated with "TASC" and his community control was revoked. The next item on the record is a November 3 judgment entry stating that appellant's case was called for trial on October 30, but that appellant and Rodriguez-Baron made a joint motion to continue, which the court sustained. The judgment entry also sustained appellant's counsel's motion to withdraw and appointed appellant new counsel. The *Page 6 
court set a status hearing for November 16. Thus, appellant must have withdrawn his plea.
 {¶ 34} This time should not be counted on appellant's speedy trial clock because once he entered a guilty plea, the matter was over for speedy trial purposes. However, the time from October 12, when appellant apparently withdrew his plea and the court revoked his bond, to October 30, when appellant and Rodriguez-Baron made a joint motion to continue the trial, should be counted on appellant's speedy trial clock. And since it seems appellant was in jail for that time period, the triple-count provision should apply. This added 54 days to appellant's speedy trial time (18 days x 3) for a total of 247 speedy trial days.
 {¶ 35} The next entry on the record is dated December 21. It states that the case was called for a status conference on December 19 and that appellant made an oral motion to continue the trial, which had been scheduled for February 26, 2007. This continued to toll appellant's speedy trial clock. The court sustained appellant's motion to continue and set the trial for March 5, 2007.
 {¶ 36} The case proceeded to trial on March 5, 2007. Thus, no further time passed on appellant's speedy trial clock.
 {¶ 37} Because the state brought appellant to trial in 247 speedy trial days, appellant's right to a speedy trial was not violated. Accordingly, appellant's first assignment of error is without merit.
 {¶ 38} Appellant's second assignment of error states:
 {¶ 39} "THE TRIAL COURT VIOLATED APPELLANT'S RIGHT TO DUE PROCESS AND A FAIR TRIAL WHEN IT ENTERED A JUDGMENT OF CONVICTION FOR POSSESSION OF MARIJUANA, WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 40} Here appellant argues that his conviction was against the weight of the evidence. He points out that he was arrested at Morales's home, not his own home. Because the marijuana was found in Morales's home, appellant argues that possession of the marijuana belonged to Morales. Appellant argues that the only *Page 7 
evidence linking him to the marijuana was Morales's testimony. He contends that Morales's testimony was unreliable because Morales testified as part of a plea deal and Morales admitted to being a long-time marijuana user.
 {¶ 41} In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541. "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" Id. (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. Id. at 390.
 {¶ 42} Still, determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts.State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
 {¶ 43} The jury convicted appellant of possession of marijuana in violation of R.C. 2925.11(A)(C)(3)(f), which provides:
 {¶ 44} "(A) No person shall knowingly obtain, possess, or use a controlled substance.
 {¶ 45} "* * *
 {¶ 46} "(C) Whoever violates division (A) of this section is guilty of one of the following:
 {¶ 47} "* * *
 {¶ 48} "(3) If the drug involved in the violation is marihuana * * * whoever violates division (A) of this section is guilty of possession of marihuana. The penalty for the offense shall be determined as follows:
 {¶ 49} "* * * *Page 8 
 {¶ 50} "(f) If the amount of the drug involved equals or exceeds twenty thousand grams, possession of marihuana is a felony of the second degree, and the court shall impose as a mandatory prison term the maximum prison term prescribed for a felony of the second degree."
 {¶ 51} The evidence at trial revealed the following.
 {¶ 52} Agent Ryan Davis, of the Alcohol, Tobacco, Firearms, and Explosives (ATF) Task Force, was the head investigator in the search of Morales's house. Agent Davis testified that upon arriving at Morales's house, he announced his presence and when no one responded, his team rammed open the door. (Tr. 315). Agent Davis encountered Morales in the breezeway. (Tr. 315). He found Mrs. Morales in the living room. (Tr. 315). In one of the bedrooms, Agent Davis found Morales's three children. (Tr. 315). And in another bedroom, Agent Davis found appellant and Rodriguez-Baron. (Tr. 315-16). Everyone found in the house was taken outside. (Tr. 315-16).
 {¶ 53} After everyone was out of the house, Agent Davis sent Officer Brian Cionni and his police dog into the house so that the dog could check for drugs. (Tr. 318). Agent Davis stated that Officer Cionni informed him that the dog indicated drugs were present under the basement stairs. (Tr. 319). There he found a large, black trash bag full of marijuana and a duffel bag containing a large brick of marijuana. (Tr. 319-20). The trash bag contained 24 individual baggies of marijuana each containing approximately 460 grams, or approximately one pound, of marijuana. (Tr. 322-23, 325-26). The brick of marijuana weighed approximately 35 pounds. (Tr. 320). Agent Davis stated that the tag on the duffel bag read, "Deltoro/FR." (Tr. 321).
 {¶ 54} Agent Davis further testified as to what else was found in the house. A scale, more baggies, and marijuana residue were found on a table in the basement. (Tr. 330). A shoebox containing three baggies of marijuana was found in one of the bedrooms. (Tr. 331). One to two pounds of marijuana was found in a crock pot box in the living room closet. (Tr. 331). And a bag of marijuana was found inside a glove on the living room coffee table. (Tr. 332). *Page 9 
 {¶ 55} Morales testified next. He stated that early on the morning of May 14, 2005, four men showed up at his house: Giovanni, Eddie, Rodriguez-Baron, and appellant. (Tr. 395). Morales stated that prior to that time the only one of the four men that he knew was Giovanni. (Tr. 396). Morales testified that Giovanni knocked on his door and told him to open his garage door, which he did. (Tr. 397). Morales stated that the men backed their car into his garage and opened the trunk. (Tr. 397). Inside the trunk, Morales saw suitcases and marijuana. (Tr. 397). He stated that all five of them gathered around the trunk. (Tr. 397). Morales stated that the men then unloaded the packages, some of which contained clothes and others of which contained marijuana. (Tr. 397-98). Morales stated that in all there were two bricks of marijuana, one in a black duffel bag and another just laying on top of some packages. (Tr. 398-99). The men brought everything into Morales's basement and stored it under the stairs where they left it for the night. (Tr. 399). Morales stated that appellant and Rodriguez-Baron spent the night at his house. (Tr. 400).
 {¶ 56} Morales testified that the next day Giovanni arrived at his house with a box of Glad bags and scales. (Tr. 400). Morales stated that he, Giovanni, Eddie, Rodriguez-Baron, and appellant all went into his basement and began bagging up the marijuana. (Tr. 401). He testified that each of the men grabbed bags and filled them with a pound of marijuana. (Tr. 402-403). Morales specifically stated that appellant was involved in this process. (Tr. 403, 404). He stated that the group filled between 20 and 28 bags. (Tr. 403). This job took a couple of hours. (Tr. 405). After the group finished, Morales stated that he put the one-pound bags into a garbage bag and stored it back under his basement stairs. (Tr. 405). He stated that the group only broke up one of the two bricks of marijuana. (Tr. 405). They kept the other brick under the stairs. (Tr. 405). Morales stated that the group did nothing further with the marijuana; it remained under the stairs until the police confiscated it. (Tr. 407-409). The group then discussed how they were going to distribute the marijuana. (Tr. 406).
 {¶ 57} Two days later, around 10:30 a.m., Morales stated that the police showed up at his house. (Tr. 409). Morales testified that he yelled to Rodriguez-Baron *Page 10 
that the police were there and appellant and Rodriguez-Baron ran into a bedroom and locked the door. (Tr. 409). Morales testified that the marijuana found in smaller quantities throughout the house was his personal stash. (Tr. 410-11).
 {¶ 58} Morales admitted that he too was charged in this case and that he was testifying as part of a plea deal. (Tr. 411-12). He stated that appellant and Rodriguez-Baron had wanted him to take the blame for them, but he would not do it. (Tr. 414). Morales admitted that he could have lost his house and his motorcycle as a result of his involvement in this case. (Tr. 415, 421). And he admitted that his plea deal provided that the state agreed to dismiss the possession of marijuana count that he was facing, agreed to amend the trafficking count to conspiracy, and agreed to recommend community control. (Tr. 426). Additionally, the plea deal provided that the state would vacate the forfeiture specification. (Tr. 427).
 {¶ 59} Next, Officer Cionni testified. Officer Cionni stated that he has a K-9 partner named Robby. Officer Cionni stated that Robby is trained to search for drugs and to indicate to Officer Cionni when he finds them. (Tr. 451). He testified that when he gave Robby the command to search for drugs in Morales's house, Robby indicated that drugs were present under the basement stairs, in a box in the living room closet, in a glove on the coffee table, and in a box in a bedroom closet. (Tr. 451-55).
 {¶ 60} Finally, several other ATF agents and officers testified regarding their roles in the search. Their testimony merely corroborated Agent Davis's testimony regarding what items were found during the search.
 {¶ 61} Given this evidence, the jury's verdict was not against the manifest weight of the evidence. Morales specifically testified that appellant was one of the men who showed up at his house with two bricks of marijuana in the trunk, that appellant helped to unload the marijuana into his basement, and that appellant participated in dividing up and weighing the marijuana. Thus, Morales's testimony clearly implicated appellant in possession of the marijuana. Furthermore, the duffel *Page 11 
bag in which police located a 35-pound brick of marijuana, was labeled with a tag reading "Deltoro/FR."
 {¶ 62} Whether to believe Morales's testimony was a question for the jury. Although an appellate court is permitted to independently weigh witnesses' credibility when determining whether a conviction is against the manifest weight of the evidence, we must give great deference to the fact finder's determination of credibility. State v. Wright, 10th Dist. No. 03AP-470, 2004-Ohio-677, at ¶ 11. The policy underlying this presumption is that the trier of fact is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing credibility. Id. The jury heard Morales explain that he was testifying as a part of a plea deal. They knew that because of his cooperation with the state, some of the charges against him were dropped and the penalties he faced were less severe. The jury was then able to take these facts into consideration when weighing the credibility of Morales's testimony. We will not second-guess the jury's determination that Morales's testimony was credible. Therefore, we cannot conclude that the jury clearly lost its way and created a manifest miscarriage of justice.
 {¶ 63} Accordingly, appellant's second assignment of error is without merit.
 {¶ 64} Appellant's third assignment of error states:
 {¶ 65} "THE TRIAL COURT ABUSED ITS DISCRETION BY PERMITTING APPELLANT'S TRIAL TO BE JOINED WITH CO-DEFENDANT, RODRIGUEZ-BARON'S TRIAL."
 {¶ 66} Appellant filed a motion to have his trial severed from his co-defendant's trial, which the court overruled. Appellant contends in this assignment of error that the trial court erred in denying his motion. He argues that his joint trial resulted in him being found guilty by association. Appellant asserts that he would not have been convicted based solely on Morales's testimony had he been tried separately from Rodriguez-Baron. He claims that by having a joint trial, the state was *Page 12 
able to link everyone present in Morales's home to the marijuana and create an inference of habitual criminality.
 {¶ 67} Generally, the law favors joinder of codefendants for trial. "Joinder conserves judicial and prosecutorial time, lessens the not inconsiderable expenses of multiple trials, diminishes inconvenience to witnesses, and minimizes the possibility of incongruous results in successive trials before different juries." State v. Thomas (1980),61 Ohio St.2d 223, 225, 400 N.E.2d 401. However, in some cases joinder can be prejudicial to a defendant. Crim. R. 14 provides for relief from prejudicial joinder, stating that "[i]f it appears that a defendant * * * is prejudiced by a joinder * * * of defendants * * * for trial * * *, the court shall order * * * grant a severance of defendants, or provide such other relief as justice requires."
 {¶ 68} An appellate court reviews a trial court's decision on joinder for abuse of discretion. State v. Bundy, 7th Dist. No. 02-CA-211,2005-Ohio-3310, at ¶ 55. Abuse of discretion connotes more than an error of law or fact; it implies that the trial court's judgment is arbitrary, unreasonable, or unconscionable. State v. Adams (1980),62 Ohio St.2d 151, 157, 404 N.E.2d 144. We will not conclude that a trial court abused its discretion in refusing to grant severance where the prejudicial aspects of joinder are too general and speculative. Bundy,2005-Ohio-3310, at ¶ 55. "The test is `whether a joint trial is so manifestly prejudicial that the trial judge is required to exercise his or her discretion in only one way-by severing the trial. * * * A defendant must show clear, manifest and undue prejudice and violation of a substantive right resulting from failure to sever. * * *'" State v.Schiebel (1990), 55 Ohio St.3d 71, 89, 564 N.E.2d 54, quoting UnitedStates v. Castro (C.A.9, 1989), 887 F.2d 988, 996.
 {¶ 69} In this case, appellant can point to no prejudice he suffered as a result of his joint trial with Rodriguez-Baron. If appellant had a separate trial, the evidence offered against him would have been exactly the same as in his joint trial. There was no evidence that was offered only against Rodriguez-Baron. Morales would have still testified that appellant showed up at his house with three other men and marijuana in *Page 13 
the trunk, that appellant helped to unload the marijuana, and that appellant helped to divide the marijuana into baggies. In fact, the evidence against appellant was even more overwhelming than against Rodriguez-Baron because the bag containing a large brick of the marijuana had appellant's name on it. Furthermore, appellant has not asserted that he suffered a violation of any rights as a result of the joinder of his trial with Rodriguez-Baron's trial. Thus, the trial court did not abuse its discretion in denying appellant's request for a separate trial.
 {¶ 70} Accordingly, appellant's third assignment of error is without merit.
 {¶ 71} For the reasons stated above, the trial court's judgment is hereby affirmed.
Vukovich, J., concurs.
 Waite, J., concurs. *Page 1