[Cite as *State v. Shorter*, 2014-Ohio-581.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | CASE NO. 12 MA 55 |
| V. | ) | |
| | ) | OPINION |
| JEFFREY SHORTER, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:     Criminal Appeal from Court of Common Pleas of Mahoning County, Ohio Case No. 10CR35A

JUDGMENT:     Reversed
Charges Dismissed

APPEARANCES:
For Plaintiff-Appellee     Paul Gains
Prosecutor
Ralph M. Rivera
Assistant Prosecutor
21 W. Boardman St., 6th Floor
Youngstown, Ohio 44503

For Defendant-Appellant     Attorney Jan R. Mostov
4822 Market St., Suite 250
Boardman, Ohio 44512

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated: February 13, 2014

DONOFRIO, J.

{¶1} Defendant-appellant, Jeffrey Shorter, appeals from a Mahoning County Common Pleas Court judgment convicting him of aggravated robbery, with an accompanying firearm specification, and having a weapon while under disability.

{¶2} On December 27, 2009, MyLinda Seamans was working at Belleria Pizza on Wick Avenue in Youngstown. At approximately 7:20 p.m. a man entered the store yielding a gun. The man grabbed Seamans' hand and demanded money from the cash register. Seamans pushed the "panic button" to call the police and tried unsuccessfully to open the cash register. When she was unable to open the cash register, the man fled the store.

{¶3} Seamans described the robber as a black male, approximately 50 years old, six-feet tall, and 200 pounds. She told police the man had a dark, possibly black coat, with brown fur around the hood and that he had the hood up. She also relayed that the robber was wearing black gloves with yellow writing on them.

{¶4} That night, Youngstown State University Police Officer Donald Cox was working dispatch at the YSU Police Department. The YSU Police Department is not far from Belleria. A man named Vandy Bryant came into the police department at approximately 7:30 p.m. and told Officer Cox that Belleria was being robbed. Bryant described the vehicle used at the robbery as a dark-pink or maroon 1978 Lincoln with rear-end damage and no passenger side lights. He also relayed to Officer Cox that the robber was a dark-skinned, black male wearing a thick, black coat with fur around the edges. Bryant also described the driver of the Lincoln as a black male wearing a black hat. Officer Cox put this description out over the police radio.

{¶5} Youngstown Police Officer Dorothy Johnson heard the description of the vehicle and recognized it as belonging to a tenant at the Plazaview Apartments. So she went to the apartments to look for the vehicle. When she did not find it there, she patrolled the area nearby. At approximately 8:15 or 8:20 p.m., Officer Johnson saw the vehicle on McGuffey Road. She stopped the vehicle. Stanley Croom was driving the vehicle when Officer Johnson stopped it. The car was registered to Croom. Appellant was in the passenger seat. Appellant initially identified himself as

"Semmie Shorter." Appellant and Croom were placed under arrest. A black hat and a pair of black gloves with yellow writing were recovered from the car.

{¶6} Two days later, Seamans identified Croom in a photo lineup as the man who robbed Belleria. Testing revealed that appellant's, Croom's, and another individual's DNA was present on the gloves with the yellow writing and appellant's and at least two other individuals' DNA was present on the black hat.

{¶7} On January 28, 2010, a Mahoning County Grand Jury indicted appellant and Croom in a joint indictment on one count of aggravated robbery, a first-degree felony in violation of R.C. 2911.01(A)(1)(C), with a firearm specification. It also charged Croom with one count of having weapons while under disability, a third-degree felony in violation of R.C. 2923.13(A)(2)(B). On March 11, 2010, a grand jury issued a superseding indictment that also charged appellant with one count of having weapons while under disability.

{¶8} On February 8, 2011, appellant filed a motion to sever his trial from Croom's trial due to the separate evidence against each defendant. On September 29, 2011, appellant filed a renewed motion for severance, asserting that since Croom had now elected to represent himself at trial there was even more danger of prejudice to appellant. The trial court overruled appellant's motions without explanation.

{¶9} On January 19, 2012, a grand jury handed down another superseding indictment. It added additional charges against Croom for attempted aggravated murder with a repeat violent offender specification and retaliation. These charges stemmed from allegations that Croom attempted to hire a fellow inmate at the Mahoning County Jail to kill Seamans so that she would not be able to testify against him at trial.

{¶10} The trial court severed the having weapons while under disability charges from the remainder of the charges. These charges were tried to the court while the remaining charges were tried simultaneously to a jury. Appellant was represented by counsel but Croom represented himself. The court found appellant and Croom guilty of having weapons while under disability. The jury found appellant

and Croom guilty of all remaining charges and specifications.

**{¶11}** The trial court subsequently held a sentencing hearing where it sentenced appellant to ten years in prison for aggravated robbery, three years for the firearm specification, and three years for having a weapon while under a disability. The court ordered appellant's sentences to be served consecutively for a total of 16 years in prison.

**{¶12}** Appellant filed a timely notice of appeal on March 14, 2012.

**{¶13}** Appellant raises five assignments of error, the first of which states:

> THE TRIAL COURT ERRED, DEPRIVING MR. SHORTER OF HIS RIGHT TO DUE PROCESS OF LAW UNDER THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION, WHEN IT DENIED MR. SHORTER'S CRIM.R. 29 MOTION FOR JUDGMENT OF ACQUITTAL NOTWITHSTANDING THE VERDICT, WHEN THE EVIDENCE ADDUCED AT TRIAL WAS INSUFFICIENT TO SUPPORT THE CONVICTIONS.

**{¶14}** In this assignment of error, appellant asserts the evidence was insufficient to support the jury's verdict and the trial court should have granted his Crim.R. 29 motion for acquittal or his motion for judgment notwithstanding the verdict.

**{¶15}** Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In essence, sufficiency is a test of adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.* In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Smith*, 80 Ohio

St.3d at 113.

{¶16} The jury convicted appellant of aggravated robbery in violation of R.C. 2911.01(A)(1), which provides:

> (A) No person, in attempting or committing a theft offense * * * or in fleeing immediately after the attempt or offense, shall do any of the following:
>
> (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it.

{¶17} The jury also convicted appellant of an accompanying firearm specification in violation of R.C. 2941.145(A), finding that appellant had a firearm on or about his person or under his control while committing the offense and displayed the firearm, brandished the firearm, indicated that he possessed the firearm, or used it to facilitate the offense.

{¶18} And the trial court convicted appellant of having weapons while under disability in violation of R.C. 2923.13(A)(2)(B), which provides:

> (A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:
> * * *
> (2) The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence.

{¶19} Because there was no evidence to suggest that appellant himself went into Belleria, brandished a gun, and demanded money, it is reasonable to presume the jury found appellant guilty of complicity by aiding and abetting Croom in the

above acts.

**{¶20}** A charge of complicity may be stated in terms of the complicity statute or in terms of the principal offense. R.C. 2923.03(F). In order to support a conviction for complicity by aiding and abetting, the evidence must show that the defendant "supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *State v. Johnson*, 93 Ohio St.3d 240, 245, 2001-Ohio-1336, 754 N.E.2d 796. The defendant's intent may be inferred from the circumstances surrounding the crime. *Id.* The defendant's "'[p]articipation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.'" *Id.*, quoting *State v. Pruett*, 28 Ohio App.2d 29, 34, 273 N.E.2d 884 (1971).

**{¶21}** Appellant makes several arguments under this assignment of error. First, he argues that statements made by Vandy Bryant should not have been admitted into evidence because they were hearsay and there was no evidence that Bryant was "unavailable" to testify.

**{¶22}** On review for sufficiency of the evidence, an appellate court is to consider all testimony presented at trial, whether or not it was properly admitted. *State v. Peeples*, 7th Dist. No. 07 MA 212, 2009-Ohio-1198, ¶¶16-17, citing *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216. We do not determine whether evidence was inadmissible and then review the sufficiency of the admissible evidence. *Id.* at ¶16. Thus, we consider Officer Cox's testimony as to what Bryant reported to him because the jury considered this evidence in reaching its decision.

**{¶23}** According to Officer Cox, at 7:27 p.m. on the night in question, Bryant came into the YSU Police Station and reported that Belleria was being robbed. (Tr. 686, 689). Bryant described the vehicle used in the robbery as a dark-pink or maroon 1978 Lincoln with rear-end damage and no passenger lights. (Tr. 687). Bryant described the robber as a gun-yielding, dark-skinned black male wearing a

thick black coat with fur on the edges. (Tr. 688). Bryant told Officer Cox the robber got into the Lincoln, which was being driven by "a black male wearing a black hat." (Tr. 688). This is the only description the jury is ever given of the driver of the Lincoln.

{¶24} The remaining evidence was as follows.

{¶25} Seamans testified that at approximately 7:20 p.m., a man entered Belleria and approached the counter. (Tr. 535). The man, while pointing a gun at Seamans with one hand, grabbed her arm with the other hand and demanded money. (Tr. 535-536, 539). He told Seamans that if she gave him the money, no one would get hurt. (Tr. 535). Seamans was unable to open the register. (Tr. 537). The robber became upset and left. (Tr. 539). Seamans described the man as wearing a black jacket with fur around the hood and black gloves with yellow writing on them. (Tr. 538). She thought the robber was approximately 5'8" and 200 pounds. (Tr. 542). Two days after the robbery, Seamans was shown two photo arrays and picked Croom's photograph out of the second array as the man who robbed her. (Tr. 546-548). Seamans also identified Croom at trial. (Tr. 557).

{¶26} Seamans described the robber's gun as a black revolver with brown handgrips. (Tr. 538). She was able to differentiate between a revolver and a semi-automatic weapon due to her experience with weapons during her time in the military. (Tr. 538-539). She stated that during her encounter with the robber he had the gun pointed at her. (Tr. 539).

{¶27} Jacquelyn Richards, another Belleria employee, testified that on the night in question she was in the back of the restaurant making pizza when she heard someone yelling. (Tr. 516). She went to see what was happening and saw a black man with a black gun yelling at Seamans. (Tr. 517). Richards crawled back to the kitchen and another employee called 911. (Tr. 518).

{¶28} Officer Brad Ditullio responded to a call at Belleria at 7:27 p.m. (Tr. 476). He interviewed Seamans, who gave him a description of the robber. (Tr. 479). He also watched a video from Belleria's surveillance cameras and noticed the yellow

writing on the robber's gloves. (Tr. 483).

**{¶29}** Upon hearing the description of the getaway car on the police radio, Officer Johnson recognized the car from her side job working security at the Plazaview Apartments. (Tr. 665-666). She stated that the Lincoln was a "real weird-looking color" and had heavy rear-end damage. (Tr. 666). Officer Johnson began looking for the car near the apartments. (Tr. 667). She spotted it nearby on McGuffey Road at 8:15 or 8:20 p.m. (Tr. 667). She stopped the car. (Tr. 668). Croom was driving the car and appellant was the passenger. (Tr. 670, 673-674).

**{¶30}** Officer Sharon Burton processed Croom's car after the arrest. Officer Burton testified that she found a pair of gloves with yellow writing on them (Ex. 6) and a black hat (Ex. 9) in the front console. (Tr. 651). Seamans identified the gloves as those worn by the robber. (Tr. 559).

**{¶31}** Christopher Smith is a forensic biologist who performed DNA testing at the Bureau of Criminal Identification and Investigation. He compared DNA from the gloves and hat found in Croom's car with DNA samples from appellant and Croom.

**{¶32}** As to the gloves, Smith concluded that they contained DNA consistent with appellant, Croom, and at least one other individual. (Tr. 778). He stated that appellant could not be excluded as a major contributor of the DNA in the gloves. (Tr. 779). And he stated that Croom could not be excluded as a minor contributor of the DNA in the gloves. (Tr. 781). Smith agreed this could be consistent with appellant wearing the gloves routinely and Croom wearing them less often. (Tr. 781).

**{¶33}** As to the hat, Smith concluded it contained DNA consistent with appellant and at least two other individuals. (Tr. 782). Smith stated he was unable to draw a conclusion regarding Croom's DNA in the hat. (Tr. 782-783). There was not enough information in the DNA profile to determine if Croom's DNA was present. (Tr. 783).

**{¶34}** This was the extent of the evidence as it pertained to appellant. There was no evidence that appellant personally robbed Belleria or ever had actual possession of the gun. Thus, the jury found him guilty of complicity by aiding and

abetting Croom in robbery and possession of a firearm. The question then facing this court is whether the above evidence was sufficient to prove that appellant aided and abetted Croom.

{¶35} The evidence against appellant can be summed up as follows. Croom was identified as robbing Belleria at 7:27 p.m. When Croom fled Belleria, a black male wearing a black hat was driving Croom's vehicle. Appellant was found with Croom, as a passenger in Croom's vehicle, between 8:15 and 8:20 p.m. Inside Croom's vehicle was a pair of gloves that he likely wore during the robbery and a black hat. Both the hat and the gloves contained appellant's DNA along with DNA belonging to at least two other individuals.

{¶36} From this evidence it would be highly speculative to presume that appellant was the driver of Croom's car when Croom robbed Belleria. The only description of the getaway driver was that he was a black male wearing a black hat. This description is not very helpful. Furthermore, police did not stop Croom's vehicle until at least 48 minutes after the robbery. And appellant was not driving the car at the time. Instead, Croom was driving. There is no explanation as to what occurred during the 48 minutes after the Belleria robbery and before Croom and appellant were apprehended by police.

{¶37} In order for the jury to convict appellant of complicity to aggravated robbery, the evidence had to show that appellant "supported, assisted, encouraged, cooperated with, advised, or incited" Croom in the commission of the robbery, and that appellant shared Croom's criminal intent. *Johnson*, 93 Ohio St.3d at 245. And while participation in the principal offender's criminal intent can be inferred from presence and companionship before and after the robbery, there is no evidence that appellant was the driver of Croom's car when Croom fled from Belleria. The only description of the driver was that he was a black male wearing a black hat. There was no description of the height, weight, age, or other clothing of the driver. And while appellant was with Croom when he was apprehended, this did not occur until at least 48 minutes after the robbery. This is a substantial lapse in time when it is one

of the only facts to potentially link appellant to the robbery. Moreover, appellant was not driving the car when it was stopped by police. Croom was driving. Thus, Croom clearly had the time and the opportunity to switch drivers after the robbery.

{¶38} Appellant further argues the DNA evidence relied on by the state did not link him to the crimes. He urges that even if the state proved that the gloves found in Croom's car belonged to him, this did not link him to the robbery beyond a reasonable doubt.

{¶39} Smith testified that DNA found in the gloves and the hat was consistent with appellant's DNA. However, the gloves also contained DNA consistent with Croom and at least one other person and the hat contained the DNA of at least two other people. Thus, the DNA evidence did not actually link appellant to the robbery.

{¶40} Based on the above, we must conclude that the evidence was not sufficient to support appellant's convictions for aggravated robbery with a firearm specification and having a weapon while under disability.

{¶41} Accordingly, appellant's first assignment of error has merit.

{¶42} Appellant's remaining assignments of error state:

MR. SHORTER'S DUE PROCESS RIGHTS UNDER THE STATE AND FEDERAL CONSTITUTIONS WERE VIOLATED BY PROSECUTORIAL MISCONDUCT WHEN THE STATE'S ATTORNEY COMMENTED ON MR. SHORTER'S FAILURE TO PRESENT EVIDENCE AND/OR TESTIFY AT TRIAL, THEREBY SHIFTING THE BURDEN OF PROOF TO MR. SHORTER AND VIOLATING HIS FIFTH AMENDMENT RIGHTS.

MR. SHORTER'S DUE PROCESS RIGHTS UNDER THE STATE AND FEDERAL CONSTITUTIONS WERE VIOLATED BY PROSECUTORIAL MISCONDUCT WHEN THE STATE'S ATTORNEY URGED THE JURY TO RELY UPON THE PREJUDICIAL EVIDENCE THAT WAS NOT PROPERLY IN THE RECORD.

MR. SHORTER WAS DENIED DUE PROCESS OF LAW AND A FAIR TRIAL WHEN THE TRIAL COURT DENIED HIS MOTIONS TO SEVER HIS TRIAL FROM THE TRIAL OF HIS CO-DEFENDANT.

MR. SHORTER WAS DENIED A FAIR TRIAL BY REASON OF CUMULATIVE ERRORS COMMITTED DURING THE COURSE OF THE TRIAL.

**{¶43}** Because we have concluded that the evidence was insufficient to support appellant's convictions, these remaining assignments of error are moot.

**{¶44}** Based on the merit of the first assignment of error, appellant's convictions are hereby reversed and the charges dismissed.

Vukovich, J., concurs.

DeGenaro, P.J., concurs with attached concurring opinion.

**{¶45}** I join the majority's holding that there was insufficient evidence to sustain Appellant's conviction pursuant to the complicity statute for aiding and abetting Croom. I write separately to discuss Appellant's assignment of error regarding joinder; it was plain error for the trial court to deny Appellant's motion to sever his trial from Croom's. Although the reversal for insufficiency technically renders the joinder assignment of error moot, the issue is significant enough to merit discussion. This appeal affords the opportunity to review a trial court's failure to sever trials where the conviction of the defendant seeking severance rests upon the complicity statute, a situation that becomes especially prejudicial where, as here, the evidence connecting the alleged accomplice to the principal co-defendant is markedly insufficient.

**{¶46}** Appellant initially moved to sever due to the separate evidence against each defendant; but when Croom decided to represent himself at trial, Appellant asserted this would increase the prejudice to him and he renewed his motion. The trial court overruled both motions without explanation. However, Appellant failed to

renew the motion after the grand jury issued the superseding indictment charging Croom with attempted aggravated murder and retaliation. Thus, we must review for plain error. To prevail on appeal, Appellant must demonstrate that but for the alleged error the outcome of the trial would have been clearly different. *State v. Waddell*, 75 Ohio St.3d 163, 166, 661 N.E.2d 1043 (1996).

**{¶47}** Generally, the law favors joinder of co-defendants to conserve judicial and prosecutorial time, lessen the expense of multiple trials, reduce the inconvenience to witnesses and minimize the possibility of incongruous results in separate trials before different juries. *State v. Thomas*, 61 Ohio St.2d 223,225, 400 N.E.2d 401 (1980). However, where the defendant establishes that joinder would be prejudicial, Crim.R. 14 provides that the trial court shall sever co-defendants' trials. On appeal, the defendant must demonstrate that the trial court abused its discretion in denying severance. *State v. Brinkley,* 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶29. "The test is 'whether a joint trial is so manifestly prejudicial that the trial judge is required to exercise his or her discretion in only one way—by severing the trial. * * * A defendant must show clear, manifest and undue prejudice and violation of a substantive right resulting from failure to sever. * * *.' " *State v. Bundy*, 7th Dist. No. 02 CA 211, 2005-Ohio-3310, ¶54. quoting *State v. Schiebel* 55 Ohio St.3d 71, 89, 564 N.E.2d 54 (1990), quoting United *States v. Castro*, 887 F.2d 988, 996 (9th Cir.1989).

**{¶48}** Appellant has made that showing here. As argued by Appellant in his first assignment of error, the evidence demonstrating that he was complicit in the aggravated robbery was scant. Although the State argues that the evidence and charges against Appellant and Croom were distinct, straightforward and easily understood, the trial court's jury instructions nonetheless could not rectify the prejudice to Appellant as a result of being tried together with Croom.

**{¶49}** The events surrounding the aggravated robbery and related charges necessarily involve Appellant and Croom. Because Appellant did not commit the same acts as Croom, he could only be convicted by aiding and abetting Croom.

Thus, a separate trial would necessarily require evidence of what Croom did the night of the robbery in order to sustain a complicity conviction against Appellant, in addition to evidence showing something more than that Appellant was a passenger in the car being driven by Croom, which had been at the crime scene almost an hour before. Conversely, Croom's conduct giving rise to the attempted aggravated murder and retaliation charges occurred two years after the robbery. Specifically, that he solicited Levitski to murder the only witness tying Croom to the robbery. That witness's testimony would in turn support a complicity conviction against Appellant. However, there was no evidence whatsoever that Appellant was involved with that separate criminal scheme.

{¶50} Thus, Appellant was prejudiced by being tried with his co-defendant on the aggravated robbery and related charges because the jury was presented with evidence that Croom attempted to eliminate the only witness to directly link Croom to the robbery and Appellant by extension via the complicity charge. The prejudice to Appellant is evident in light of this court's decision to vacate Appellant's conviction because the State presented insufficient evidence. Accordingly, Appellant's fourth assignment of error is also meritorious.